OSCN Found Document:STATE OF OKLAHOMA ex rel OBA v. DURBIN

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE OF OKLAHOMA ex rel OBA v. DURBIN
2025 OK 77
Case Number: SCBD-7528; Consol w/SCBD 7922
Decided: 10/21/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 77, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
RONALD EDWARD DURBIN II, Respondent.

PROFESSIONAL DISCIPLINARY PROCEEDING

¶0 Respondent was an attorney licensed to practice law as a member of the Oklahoma Bar Association (OBA). The OBA initiated a Rule 6 proceeding and alleged respondent's professional misconduct. Respondent is currently prohibited from practicing law by an emergency interim order of suspension (2024 OK 242025 OK 392025 OK 40

APPROVAL OF RESPONDENT'S RESIGNATION PENDING DISCIPLINARY
PROCEEDINGS DENIED; RESPONDENT DISBARRED; RESPONDENT'S
NAME REMAINS, AND SHALL BE, STRICKEN FROM ROLL OF ATTORNEYS;
AND RESPONDENT ORDERED TO PAY COSTS

Gina L. Hendryx, General Counsel, Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Ronald Edward Durbin, II, Tulsa, Oklahoma, pro se.

EDMONDSON, J.

Part I. Rule Six Proceeding

¶1 The Oklahoma Bar Association filed Rule 6 and Rule 7 professional disciplinary proceedings against respondent. We address the Rule 6 proceeding first. The Oklahoma Bar Association's Complaint, Amended Complaint, and Second Amended Complaint together allege twenty counts of professional misconduct by respondent. A hearing was held before a trial panel of the Professional Responsibility Tribunal. The trial panel found the allegations on all counts to be established and recommended respondent be disbarred. Respondent filed an affidavit of resignation with a request for its approval. The Bar Association objected to the resignation, and filed a motion for respondent to pay costs. We find and conclude proper professional discipline for respondent is that he should be disbarred and ordered to pay costs.

¶2 Respondent is an attorney who was licensed to practice law on September 22, 2009, as a member of the Oklahoma Bar Association (OBA). The OBA, as complainant, initiated in August 2023 a Rule 6 disciplinary proceeding by filing a complaint against respondent pursuant to Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. Ch. 1, App. 1-A. The OBA's complaint alleged several counts of professional misconduct by respondent. Respondent filed in September 2023 a motion to dismiss the complaint and disciplinary proceeding based upon the Oklahoma Citizens Participation Act, (OCPA), 12 O.S. §§1430-1440, inclusive. The Court denied respondent's motion to dismiss the OBA's Complaint. 

¶3 The OBA filed in February 2024 a request for an order of emergency interim suspension seeking to suspend respondent from the practice of law. en banc. 2024 OK 24

¶4 The OBA's complaint, amended complaint, and second amended complaint combined allege twenty counts of professional misconduct by respondent. 

Part II. Respondent's Resignation Pending Professional Discipline

¶5 A preliminary issue is respondent's affidavit of resignation from the OBA and his request for the Court's approval. His combined affidavit and request was filed after the conclusion of the trial panel hearing and two days prior to when the trial panel filed its report with the Court. A lawyer may resign from the OBA when the lawyer is the subject of an investigation into, or a pending proceeding involving, allegations of professional misconduct. This type of resignation from the OBA is governed by the Rules Governing Discipline Proceedings (RGDP), 5 O.S.2021, Ch. 1, App. 1-A, Rule 8. 

¶6 Respondent's affidavit states the request is submitted pursuant to Rule 8, RGDP. This affidavit states respondent "withdraws and revokes this resignation" if the OBA seeks reimbursement for costs expended by the OBA in respondent's disciplinary proceeding. 

¶7 The OBA objected to respondent's application seeking the Court's approval of the resignation. The OBA stated respondent's allegations were not factual concerning certain procedures in respondent's proceedings. The OBA argues the resignation does not comply with Rule 8.

¶8 The OBA filed an application to assess costs in the amount of $22,152.14. 

¶9 Rule 8, §8.1, RGDP, states a lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the OBA, and thereby relinquish the right to practice law, only by delivering to the Commission an affidavit stating the lawyer desires to resign. 

This Court has refused to accept a resignation pending disciplinary proceedings when the resignation does not comply with Rule 8, RGDP. 

¶10 The Court's approval of a lawyer's resignation pending an investigation or a disciplinary proceeding includes review whether the costs of an investigation or pending disciplinary proceeding should be imposed upon the lawyer. In State ex rel. Oklahoma Bar Association v. Claborn, 2019 OK 4440 P.3d 660Id. 2019 OK 4

¶11 The Rule 8 requirements for a resignation and Court's approval of a Rule 8 resignation are based upon this Court exercising its constitutional power and a nondelegable discretion regulating the practice of law. Claborn, supra.

¶12 Respondent's application for approval of his resignation from membership in the OBA pending a disciplinary proceeding is DENIED.

Part III. Rule 6 Proceeding and Due Process Claims, Motion to Disqualify OBA General Counsel and PRT Members, Additional Motion to Disqualify General Counsel, and Motion to Reconsider or in Alternative Application for Equitable Relief, and Motion to Testify

¶13 Respondent's post-hearing answer brief opens with a general introduction and "incorporates herein by reference" (1) his arguments in a motion to disqualify both the OBA General Counsel and the Professional Responsibility Tribunal, filed March 5, 2024, and (2) his motion to reconsider or in the alternative application to this Court for an emergency temporary restraining order and temporary injunction, filed November 1, 2024.

¶14 Respondent sought to disqualify OBA counsel three different times: (1) by motion filed in this Court on March 5, 2024, and (2) by his post-hearing answer brief stating the March 5th motion was incorporated into this brief, and (3) by a motion filed on August 22, 2025, several months after his trial panel hearing held in November and December 2024. Respondent also sought disqualification of PRT trial panel members at three different times, (1) by motion filed in this Court on March 5, 2024, (2) by a letter request left on the chairs for the trial panel members on the first day of his hearing, and (3) by his post-hearing answer brief.

¶15 Respondent's March 5th motion seeking to disqualify OBA General Counsel and Professional Responsibility Tribunal was before the Court and resulted in an Order by the Court dated April 8, 2024. This Order stated in part the following: "The motion of Respondent is hereby dismissed without prejudice, as premature. See 5 O.S. Ann. (West 2023) Ch. 1, App. 1-A, Rule 3, § 3.4(b)-(c) (RGDP); Procedural Rule 1(b), Procedural Rules (PR) of the Professional Responsibility Tribunal (PRT)." 

¶16 Rule 3, §3.4(b) states a procedure when a lawyer subject to an investigation on disciplinary grounds, or counsel for such a lawyer, shall seek disqualification of the General Counsel, and the Professional Responsibility Commission shall determine whether or not disqualification will be required. 

¶17 Respondent filed five documents in this matter between the April 8th Order citing Rule 3 and the first day of respondent's trial panel hearing, November 4, 2024. 

¶18 Respondent's August 22, 2025, motion asked the Court to disqualify the General Counsel, or in the alternative for the Court to direct a "finding for respondent's defense and grant a new trial." Respondent requests the Court to provide "funding for Respondent's defense equal to the resources being deployed against him." He also requests the Court to vacate all previous disciplinary proceedings brought against him. He asserts his OBA membership dues are being used against him to fund OBA members who are involved with prosecuting the disciplinary proceedings. Respondent's motion concerning General Counsel relies upon allegations of fact that according to the record herein existed as allegations and were known by respondent as allegations prior to his disciplinary hearing. Additionally, respondent's legal arguments and allegations of fact raised in his motion relating to General Counsel could have been presented within the context of the procedure provided by Rule 3.4(b)-(c), RGDP, the procedure this Court directed respondent to use in the Court's April 8th Order.

¶19 Respondent's parity-in-funding argument is one type of a parity-in-legal-representation argument. Respondent states his claim is based upon an "equitable funding" that is constitutionally required as one of the "procedural safeguards" to which he is entitled because he possesses a property interest in his OBA license and the fact he paid his OBA membership dues. While respondent has a right to be represented by counsel in the proceeding, 

¶20 The April 8th Order also addressed disqualification of PRT trial panel members. The Order references Procedural Rule 1(b) of the Professional Responsibility Tribunal. Procedural Rules of the PRT are authorized by Rule 4, §4.5(b) RGDP, 

¶21 Respondent was present prior to commencement of his disciplinary hearing, and he caused to be delivered to the trial panel members a letter requesting their recusal. 

¶22 On the first day of his hearing, respondent left a letter requesting disqualification of the trial panel members. The presiding master stated the letter request for disqualification was required to be filed at least twenty days prior to the hearing and respondent's request was denied as untimely. 

¶23 Respondent's letter to the trial panel members stated its members should disqualify. Respondent alleged: (1) The trial panel master was "unprofessional and biased;" (2) He was denied adequate time for discovery; (3) The trial panel had pursued a contempt against respondent; (4) An Oklahoma Highway Patrol Officer worked as a security officer at one of the recent hearings in S.C.B.D. No. 7528 when respondent was present, the same officer was a witness on what happened at the hearing, and the officer mistreated respondent; and (5) His "Motion to Reconsider" was denied by the trial panel.

¶24 Respondent's assertion of biased and alleged unprofessional actions by the trial panel references motions he filed that were denied by the trial panel. In support of his these allegations he references his November 1st motion to reconsider

¶25 In State ex rel. Oklahoma Bar Association v. Mothershed, 2011 OK 84264 P.3d 1197de novo review of the case." Id. at ¶51, 264 P.3d at 1216. Further, "The parties raise their claims and defenses in the pleadings and have an opportunity to present facts supporting those claims and defenses in a record; and that record is forwarded to this Court to consider with legal arguments made by the parties in their briefs." Id. We explained in Mothershed, a trial panel hearing provides an opportunity to make a record of facts (1) to challenge allegations of misconduct, (2) to support mitigation of discipline, and (3) to support defenses raised by a respondent. Id. at ¶35, 264 P.3d at 1211. This Court will not review facts raised by a respondent for the first time in a brief filed after the respondent's trial panel hearing. State ex rel. Oklahoma Bar Association v. O'Neal, 1993 OK 61852 P.2d 713e.g., orders by this Court herein, dates of filings by the parties, and the nature of those filings.

¶26 Respondent's trial panel hearing occurred over eight days in November and December 2024, and the trial panel's report was filed with this Court on January 31, 2025, followed by respondent's improper resignation attempt. On August 22, 2025, respondent filed a motion to testify before this Court after the trial panel hearing was concluded. His motion states the PRT "closed the record without allowing Respondent to testify or present a rebuttal case, despite his diligent effort to do so." The record does not support respondent's assertion.

¶27 The record before us is clear that respondent declined to appear during the eight days the OBA presented exhibits and witnesses. The OBA rested its case on the eighth day of the hearing on December 10, 2024. The transcript of the hearing on that date shows the OBA rested its case at 2:10 p.m., and "Mr. Durbin is not present to call any witnesses to start his case in chief." th were not necessary because respondent was not present on December 10th to start his case in chief.

¶28 Respondent was provided an opportunity to present witnesses, exhibits and testify at the trial panel hearing with representation by counsel in accordance with trial panel procedure. allegations of fact in his disciplinary filings when he did not present a case in chief with facts, and many of the facts he alleges are not shown in the record by anything other than mere allegations. Respondent's motion states his "absence during the OBA's case-in-chief was necessary financial choice." This statement of opinion presented as fact is, of course, an allegation and not a fact established by proof for the purpose of respondent's disciplinary proceedings. Respondent's filings, both before and after the trial panel proceeding, contain allegations of fact. These allegations are cited by respondent as if they are legally cognizable by the Court for the purpose of determining whether respondent's actions were unprofessional and whether the OBA met its burden of proof. 

¶29 For example, on March 19, 2024, and prior to the trial panel hearing, respondent filed a 254-page response. The response objected to the Court's procedure, his lack of confidence in the judiciary, allegations against the OBA's General Counsel, statements about historical events involving members of his family, statements asserting a factual background relating to other lawyers, and legal argument asserting he has a right of free speech that is being violated. He made specific allegations of fact concerning a judge. He alleged a judge was intoxicated at a club on more than one occasion and also intoxicated while driving a motor vehicle with a minor child as a passenger. He alleged the actions of the judge were on video, and "The full video clips will be played at the rehearing on this matter." Count XVII herein discusses a video respondent posted on social media purporting to show a level of alcohol consumption. An expert stated the video was taken on different dates and employed "jump cuts" to splice together different videos to give an impression of a single sequence of events.

¶30 A respondent's allegations of fact unsupported by either a record of facts or proper agreement and acquiescence by the OBA as opposing partyState ex rel. Oklahoma Bar Association v. O'Neal, supra.

¶31 The record before us shows respondent received notice of dates set aside for his hearing, and respondent had actual notice of these days. Respondent failed to be present on the day the OBA rested its case, and he failed to commence his case in chief at that time. The absence of respondent and his failure to present his case in chief is not error by the trial panel.

¶32 Respondent attached to his August 22nd motion for leave to testify a photocopy of a purported email sent to the Chief Justice of this Court alleging he had been denied an opportunity for discovery "and all my subpoenas were improperly quashed by the Trial Panel." 

¶33 On November 1, 2024, and a few days prior to the first day of respondent's hearing, the trial panel granted a motion to quash filed on behalf of the Tulsa County Court Clerk, Tulsa County Sheriff, Tulsa County Clerk's Office, Tulsa County Judiciary, and City of Tulsa employees and officials. The City of Tulsa filed a special entry of appearance with a motion to quash, stating respondent issued and signed subpoenas duces tecum to nineteen individuals and the "Current City Attorney for the City of Tulsa." The motion stated respondent was not licensed to practice law at that time, the subpoenas were not issued in accordance with 12 O.S.2021, §2004.1

¶34 The motion also stated none of the individuals were properly served and relied on 12 O.S.2021, §2004.112 O.S.2021, §2004.1

¶35 Thirty additional named individuals, represented by the Oklahoma Attorney General's Office, filed on October 22, 2024, a motion to quash respondent's subpoenas duces tecum. The motion and brief stated the subpoenas were not issued and signed in accordance with 12 O.S.2021, §2004.1

¶36 Respondent's motion to testify filed August 22, 2025, and after conclusion of the trial panel hearing, does not address the validity of the grounds raised on the motions to quash brought by the City of Tulsa and the Oklahoma Attorney General. The trial panel's order granting both motions to quash is facially correct. Respondent did not make a record of facts at his trial panel hearing concerning the motions to quash, and he cannot rely upon allegations of fact raised in a post-hearing motion as if they qualify as facts shown of record for the purpose of challenging the order. For example, the trial panel order granting the motions to quash states it is based upon the antecedent motions. Respondent cannot show a different basis for the order by post-hearing mere allegations of fact or an allegation of bias not supported by facts of record and cognizable legal authority.

¶37 Respondent's motion to testify also challenges the trial panel procedure concerning witnesses appearing before the trial panel by video conferencing. Several days prior to the start of the trial panel hearing the OBA filed a motion to present some of its witnesses by video conferencing. The motion stated its request was due to the distance witnesses would need to travel if appearing in person, and included in this number were two witnesses of advanced age and one with significant health issues. The motion was granted by the trial panel.

¶38 On November 5, 2024, the second day of the trial panel hearing, respondent filed a motion with the PRT and requested a change in venue for a hearing room located at "the Oklahoma Supreme Court across the street" from the OBA building, "the access information required to attend the hearings via video conference and/or telephonically as the Trial Panel granted to the OBA regarding witnesses," or "an Order providing equitable treatment for Respondent by Petitioner in the OBA facility." Respondent alleged a hearing room located in the OBA building was not "neutral territory." Respondent stated he saw beverages and snacks to be made available to the trial panel members by the OBA.

¶39 The OBA objected to respondent's motion and stated respondent had a "demonstrated history of recording and/or broadcasting the proceedings in S.C.B.D. No. 7528 in defiance of the previous orders of the Professional Responsibility Tribunal." The OBA also argued the trial panel allowing witnesses to appear by a video conference did not allow parties to appear by the same manner. The OBA argued that beverages and snacks are routinely provided for the trial panel members, both parties, and witnesses. The OBA also disagreed with several statements made by respondent. On November 14, 2024, the trial panel denied respondent's motion. Respondent, as a party affirming an alleged fact of impropriety by OBA-provided "snacks" and other alleged unequal treatment concerning who is allowed to appear by video conference, has a burden to support his allegations with a cognizable record. 

¶40 In respondent's motion for leave to testify every issue he raises concerning his appearance before the PRT and the timing of his opportunity to present his case in chief is an issue that could have been raised prior to, or during, his trial panel proceeding. In Mothershed, several years prior to respondent's proceeding, we explained an adjudication of a disciplinary claim includes an examination of affirmative defenses and constitutional claims raised by a respondent. We explained "a respondent in a disciplinary proceeding has an adversarial procedural burden to present his or her defenses with the necessary supporting facts and legal arguments at the procedurally proper time before the procedurally proper tribunal." 

¶41 Respondent's due process challenge has two additional related elements: (1) He alleges due process requires he should have been given more time by the trial panel to complete discovery efforts; and (2) The trial panel's failure to grant him more time for discovery allegedly shows trial panel bias with a due process requirement the trial panel be disqualified from hearing the OBA's allegations against him. He states the OBA was granted continuances for additional investigations and time to file an amended complaint and a second amended complaint against him. He alleges trial panel bias stating the trial panel did not grant him additional time to complete discovery, and the trial panel had previously referred respondent's alleged contempt in the disciplinary proceeding to a District Court Judge.

¶42 Lawyers are entitled to due process during the course of disciplinary proceedings. Johnson v. Board of Governors of Registered Dentists of State of Oklahoma, 1996 OK 41913 P.2d 1339Id. 1996 OK ¶32, 913 P.2d at 1348. A judge should disqualify when the judge has a "direct, personal, substantial, pecuniary interest" in the adjudication of the case before the judge. 

¶43 In support of his allegation of bias by the trial panel, respondent points to a disagreement between respondent and the OBA related to respondent's efforts to use his electronic devices to record his interactions with the trial panel and OBA employees at meetings prior to his trial panel hearing. This Court assigned a District Court Judge to hear the PRT's contempt certification concerning respondent's conduct concerning recording devices. In August 2024, respondent requested additional time because he and the OBA "recently met to discuss ways to resolve the matters between them." 

¶44 Respondent's trial panel hearing commenced a few days later on November 4, 2024. On November 14, 2024, and one day prior to the third day of his hearing, the trial panel issued an order stating the use of cellular or recording devices was prohibited during the hearing, and possession of them in the hearing room during the hearing was prohibited, except for members of the trial panel. On March 24, 2025, the OBA dismissed the contempt citation before its adjudication because respondent's trial panel hearing had concluded.

¶45 A trial panel heard testimony and received exhibits concerning respondent's twenty counts of alleged misconduct unrelated to the pending contempt citation to be adjudicated by a District Court Judge who was not a member of respondent's trial panel. Respondent's efforts to disqualify the trial panel were not timely, not procedurally proper, and not substantively sufficient. Respondent was directed by this Court to the proper procedure when seeking disqualification, and he did not follow the procedure. These circumstances do not show a constitutionally intolerable risk of bias by the trial panel.

¶46 Respondent states he was denied more time to complete discovery. Generally, due process includes a right to notice and an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

¶47 The allegations made by the OBA concern respondent's actions specifically identified in the complaint and amended complaints filed by the OBA. These allegations also specify other individuals involved, or present, or affected, by respondent's actions. Respondent states many allegations against him require discovery. The 108-page first amended complaint is based, in part, upon the original 69-page original complaint against respondent. The trial panel hearing commenced more than one year after the original complaint was filed. The OBA's first amended complaint was filed eight months prior to the trial panel hearing. While the second amended complaint was filed three months before respondent's hearing, it added only two additional counts and both counts were based upon two previous OBA grievances filed by third parties against respondent. 

¶48 The OBA's allegations concerning respondent's conduct in this case are, or should be, of such nature that a respondent lawyer need not obtain extensive discovery to understand facts needed to defend against the allegations, and a respondent lawyer should know without extensive discovery the identity of witnesses and exhibits needed to present a legal defense in respondent's case in chief. Respondent was not denied an adequate time for discovery.

¶49 In summary, respondent's motions to disqualify OBA General Counsel, and the PRT members, motion to reconsider or in alternative application for equitable relief, request for time for additional discovery and vacating the trial panel proceedings, and motion to testify are not supported by cognizable-record facts sufficient for his requested relief. When a respondent in a disciplinary process alleges a violation of due process caused by application of a procedural rule and the nature of the alleged violation requires a fact showing prejudice by the rule's application, then "facts necessary to show prejudice must be raised before the trial panel," Mothershed, supra, and O'Neal, supra, prohibit consideration of his motions and requests on procedural grounds. Respondent's motions and requests are denied.

Part IV. Twenty Counts of Alleged Professional Misconduct

Count I

¶50 The Malone grievance and supporting evidence show respondent threatened Malone with financial ruin for her and people who supported Initiative Petition No. 811. She testified respondent made profanity-laced comments and disparaging remarks about her and her business on his law firm's Facebook page while Malone's grievance was pending. The comments including one that respondent was "coming for [her] and [her] business." Respondent threatened to burn her medical marijuana dispensary - "figuratively not literally" - "to the ground." He threatened Malone with a lawsuit for libel. Respondent requested others to make unfavorable online reviews of Malone's business. Malone's grievance stated respondent's conduct was based upon Malone's support of Initiative Petition No. 811. Malone stated her business suffered from respondent's conduct.

¶51 The trial panel concluded respondent violated Oklahoma Rules of Professional Conduct (ORPC) Rules 4.4(a) (respect for rights of a third person), 8.4(a) (conduct in violation of the ORPC), and Rules Governing Disciplinary Proceedings (RGDP), Rule 1, § 1.3 (conduct contrary to prescribed standards), and 5.4 (litigation or threat of litigation against a person filing a grievance).

¶52 Respondent argues in both his brief responding to Count I and his motion to dismiss the OBA's Complaint that he possesses a constitutional right of speech. He argues his speech was "rhetorical hyperbole" and political. His argument may be summarized as follows: When he publicly expresses his personal political views containing insulting, degrading, embarrassing, or hyperbolic threatening remarks, he may not be professionally disciplined for such remarks. He essentially argues the Constitution does not require him to be civil when expressing his personal political views about another individual engaged in a political activity. He also argues that threatening to file a libel lawsuit is not prohibited by RGDP, Rule 5.4.

¶53 When examining an applicant's membership in a Bar Association, many courts recognize one of the essential aspects of good moral character is a "respect for the rights of others." State ex rel. Oklahoma Bar Association v. Wagner, 2022 OK 13503 P.3d 1201Id. 2022 OK 18

¶55 The U.S. Supreme Court has distinguished for the purpose of criminal liability a "true threat" versus "political hyperbole" noting "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 

¶56 The OBA must establish a professional disciplinary violation by clear and convincing evidence. We do not find a Rule 4.4(a) violation. We accordingly do not find a violation of ORPC, Rule 8.4(a) 

¶57 We agree with the trial panel that respondent violated RGDP, Rule 5, §5.4 by threatening Malone with litigation because she filed a grievance against him. The rule protects those filing grievances and prohibits litigation or the threat of litigation "by reason of such filing."

Matters contained in grievances submitted to the Association, the Commission or the General Counsel, and statements, oral or written, with respect thereto, shall be privileged. Litigation or the threat of litigation by a respondent lawyer against a person filing a grievance by reason of such filing may be grounds in itself for discipline.

5 O.S. Ann. (West 2023) Ch. 1, App. 1-A, Rule 5, §5.4. The record shows respondent made several disparaging remarks on Facebook live about Malone and the threat to her business. Malone was told about by respondent's Facebook live and she posted a comment on the Facebook thread stating she heard respondent "was calling her out." Respondent read her comment for his viewers and again threatened her that he was "coming for her business." Malone then responded that she needed to file a complaint with the OBA again. He responded with personal name-calling against Malone, requested for public protestors to appear at her business, and that he was going to have a lawsuit for libel.

¶58 A chilling effect upon the process of professional discipline would occur if a lawyer could avoid application of Rule 5, § 5.4, and threaten legal actions in response to a grievance because the lawyer made a self-assessment whether the grievance was valid. 

Count II

¶59 Milstead and her son were involved in a personal injury accident on August 24, 2015. Milstead and her husband hired respondent in 2016 or early 2017. In the spring of 2019, Milstead's husband searched an online trial court docket and discovered a petition was filed August 7, 2017, and then dismissed without prejudice in February 2019. Milstead's husband contacted respondent by telephone and respondent stated he would refile the lawsuit within a week.

¶60 On August 14, 2019, Milstead and her husband made an unannounced visit to respondent's office to express their disappointment with no lawsuit being filed and no communication from respondent. The lawsuit was refiled on Sept. 5, 2019. In the summer of 2020, Milstead's online docket search showed respondent had withdrawn from their case and a new attorney, whom the Milsteads had never spoken with, filed an entry of appearance on their behalf. No communication concerning these events was made by respondent to the Milsteads.

¶61 The Milsteads provided respondent with a correct and permanent mailing address for all communications. Respondent alleged he sent notices by mail to the Milsteads. The Milsteads stated respondent used a mail address "at which they had never received mail or deliveries." The Milsteads also provided their mobile telephone numbers to respondent. The Milsteads stated respondent did not communicate with them other than the initial interview and their unannounced office visit.

¶62 The trial panel concluded respondent violated ORPC, Rules 1.1 (competency), 1.3 (diligence), 1.4 (communications), 1.16(d) (terminating representation, 8.4(a) (violations of ORPC) and 8.4(d) (conduct prejudicial to the administration of justice), and RGDP, Rule 1, § 1.3 (conduct contrary to prescribed standards).

¶63 Respondent states he filed an action for the Milsteads within the time for a statute of limitations. He indicates the timing of the initial filing and subsequent filing resulted in a delay where the Milsteads obtained 202 days while the action was pending and upon dismissal "picked up" an additional 365 days to refile the action. He asserts without a detailed explanation that such delay was a legal benefit. Respondent states "if stupidity were a rule violation, Respondent would plead guilty." He argues his medical condition was a contributing cause. He states a "temporary lapse in communication" occurred. Respondent states that after he secured new counsel for the Milsteads, he believed "they were communicated with immediately by his office." He further states, "[c]learly, that was not the case."

¶64 We decline to set the low standard respondent requests. Rule 1.1 (competency) 

¶65 The OBA states the absence of diligence, or neglect, occurred because the "five-year delay negatively impacted the strength of their case." Stephanie Milstead testified that respondent never talked to her about her loss of income and not being able to perform her prior occupation after her injury. She stated she was testifying against respondent so no one else will go through what she did with him. She voiced her opinion because "he's very unprofessional . . . especially to speak in front of a woman with the profanity he used." She testified her correct mailing address was possessed by the second lawyer who took her case from respondent, so respondent must have had her correct address in respondent's files. When asked if she could recommend respondent, she stated: "No, not even my enemies."

¶66 Stephanie's spouse, a retired police officer and firefighter, testified and explained their insurance agent recommended respondent. They were never given a copy of the petition or any pleadings. Stephanie and her spouse made an unannounced visit to respondent's office due to the elapsed time, the lack of communication, and that her spouse had not seen an action filed on the Oklahoma State Courts Network (OSCN). Her spouse testified that respondent admitted he "dropped the ball."

¶67 We find the evidence is clear and convincing respondent violate ORPC, Rules 1.1 and 1.3.

¶68 The evidence is clear and convincing that respondent violated Rule 1.4 (communications), 

¶69 Rule 1, § 1.3, RGDP, states a lawyer should not "act contrary to prescribed standards of conduct" when the act "would reasonably be found to bring discredit upon the legal profession." The extent and duration of respondent's failure to communicate with his clients culminating in another lawyer unknown to them taking control their case and representing them without their knowledge shows respondent's lack of respect for his clients. We find a violation of RGDP, Rule 1, § 1.3 due to the nature of respondent's violation of Rules 1.4 and 1.16, ORPC.

Count III

¶70 Respondent and his former spouse divorced in Tulsa County in 2017 with the parties awarded joint custody of a child at that time and other issues continued to be litigated. This Count is based upon a grievance filed with the OBA by respondent's former brother-in-law (the brother of respondent's former spouse) and allegations that respondent filed a frivolous lawsuit against respondent's former spouse and other members of her family, as well as former neighbors of respondent.

¶71 In November 2019, respondent sought emergency relief in the divorce proceeding and requested custody of the couple's child. One week later he filed an action in Tulsa County against his former spouse, as well as her mother, brother, and sister-in-law, and against a couple who were neighbors. He alleged the defendants acted in concert to "further the illegal and tortious objectives" of his former spouse by "engag[ing] in a pattern of surveillance of Plaintiff." He alleged several causes of action and that defendants' "conspiracy" caused him severe emotional distress, and that he was entitled to punitive damages, injunctive relief, special damages in excess of $75,000, pre- and post-judgment interest, costs, and attorney's fees.

¶72 The report by the trial panel states a recorded conversation in March 2020 includes respondent stating why he named the neighbors as defendants: "F-- those people...I'd like to cost them 30 or $40,000 fighting me, at a minimum. And that's if they're lucky they're only gonna spend that d-- much. So if this goes to jury trial, you're looking at $100,000.00." The defendants hired attorneys. In May of 2020, a District Court Judge granted, in part, a motion to dismiss "as to all claims concerning visitation, religious indoctrination and fraud in obtaining the divorce and other issues related to custody, visitation and removal of the child from Oklahoma" as "[s]uch matters are properly brought before the divorce court."

¶73 Defendants in the civil action filed counterclaims alleging respondent's conduct in bringing needless litigation caused by respondent's malice. They alleged when they filed a motion to dismiss, respondent countered with an amended petition without substantially amending the petition in order to cause increased legal fees for defendants. The trial court dismissed respondent's libel, slander, and fraud claims against the neighbors. The neighbors filed a counterclaim against respondent and respondent eventually filed a dismissal without prejudice. The neighbors sought their fees, costs, and expenses from respondent in the amount of $8,478.50 for fees and $295.85 for costs. The District Court ordered that it would retain jurisdiction over the motion "even should the case be voluntarily dismissed."

¶74 The alleged statements by respondent in this Count include, for example: informing his spouse that because he was an attorney he could ruin her financially in the divorce and her brother would have to foot "one hell of an expensive bill in attorney's fees on his sister's behalf;" in a dispute concerning a dog, "Hell I will make up some s-- . They will regret the f-- day they got involved in this s-- ;" concerning a neighbor's complaint to the city about a boat in respondent's driveway, "I'm going to have to sue them for something to teach them a lesson to stop messing with me. You may want to advise them I don't play around, and what's free for me to do will cost them thousands if they keep f-- with me. I may not win, but it won't cost me anything to try."

¶75 In respondent's written response to the grievance, respondent stated his actions were "to protect and ensure the health, welfare, and safety of my daughter" and that the legal action he filed was against those who acted in a manner "designed clearly for the purpose of causing me emotional distress and pain." The trial panel noted that respondent "failed to address the allegation that his civil lawsuit was filed maliciously with the intent to cause financial harm" to his spouse's family and the neighbors "by causing them to incur legal fees."

¶76 A grievance filed against respondent by his former brother-in-law alleged that respondent abused his license to practice law by filing and maintaining a frivolous and vexations lawsuit to cause financial harm to his family and the neighbors as respondent's personal vendetta. The former brother-in-law testified at the trial panel hearing that his legal fees as a result of respondent's conduct were in excess of $34,000.00. He also testified that respondent had used a frivolous civil case as leverage on the issue of child custody in the divorce proceedings.

¶77 Respondent's former neighbor testified that being named as defendant by respondent had caused her and her husband legal fees in excess of $15,000.00. She testified she and her husband were retired, financial stress with a worsened medical condition caused by respondent, and for five years they "just want him [respondent] to leave us alone."

¶78 Respondent's former spouse who appeared at the trial panel hearing pursuant to a subpoena testified she did not participate with her brother's grievance because she was afraid to testify for fear of repercussions or retaliation by respondent in the case involving custody of her child. She testified she could not go to court to enforce a $65,000.00 unpaid child support obligation owed by respondent because she owed her current attorney for unpaid fees. She testified she worked three jobs.

¶79 The trial panel concluded respondent violated ORPC, Rules 1.1 (competence), 3.1 (meritorious claims and contentions), 3.3 (candor to the tribunal), 4.4(a) (respect for rights of third persons), 8.4(a)(violations of the ORPC), 8.4(c) (misrepresentations), and 8.4(d) (conduct prejudicial to the administration of justice), and RGDP, Rules 1, § 1.3 (conduct contrary to prescribed standards), and 5, § 5.2 (failure to provide a full and fair response). 

¶80 Respondent states he is the wronged party in his divorce and child custody proceedings. He requests the Court take ju1dicial notice of allegations he made in District Court filings. Judicial notice of allegations of fact made by respondent in other legal proceedings does not make those allegations of fact to be facts in evidence or record before us in this proceeding. 

¶81 Respondent asserts the OBA relied upon biased and uncorroborated testimony. He argues the OBA cannot rely upon testimony from his ex-wife and her family unless documentary support exists for their testimony. He does not explain, with supporting authority, facts of record, and proper legal challenges, why the recorded conversation used by the trial panel is improper, or why his requests for relief improperly filed in the non-divorce proceeding are reasonably explainable by non-frivolous, or non-malicious theories of conduct, or the reasonableness of his actions which resulted in neighbors' expenditures for legal fees and then respondent's dismissals.

¶82 His post-hearing response and brief provides his version of certain facts relating to his neighbors, his ex-wife's family, and the allegations concerning litigation. His challenge to this Count is primarily one attacking the credibility of witnesses, but he did not use his opportunity to challenge credibility in the trial panel proceeding. He indicates his litigation efforts were not malicious and he asserts no finding by a court of law states his efforts were malicious.

¶83 Respondent states he was represented by counsel in the litigation used by the OBA in this Count to show professional misconduct. In State ex rel. Oklahoma Bar Association v. Dobbs, 2004 OK 4694 P.3d 31

¶84 In Dobbs we found a lawyer's representations violated RGDP Rule 1, § 1.3, and ORPC Rules 8.4(b) and (c). A violation of Rule 8.4(c) (misrepresentation), 

¶85 Rule 8.4(d), ORPC, states a lawyer may not "engage in conduct that is prejudicial to the administration of justice." In State ex rel. Oklahoma Bar Association v. Bailey, 2023 OK 34530 P.3d 24Id. at ¶127, 530 P.3d at 57-58. The evidence is clear and convincing that respondent planned to bring legal actions for the sole purpose of causing certain defendants to incur legal expenses, and he brought such proceedings. Respondent's violations of Rules 8.4(c) and (d) show violations of Rule 8.4(a) (violations of ORPC), and RGDP, Rule 1, § 1.3 (conduct contrary to prescribed standards).

Count IV

¶86 This Count is based upon grievances filed by a judge of the District Court of Tulsa County and a court bailiff employed at the District Court. The bailiff and a Tulsa County Deputy Sheriff were waiting in the judge's courtroom for the start of a criminal docket on November 22, 2022. They then went outside the courtroom to investigate a disturbance in the hallway outside of the courtroom. The bailiff and deputy asked news reporters to conduct their interviews in a designated media area. The trial panel found that "respondent interjected himself into the matter where he became aggressive and raised his voice towards" the bailiff "demanding to see the rule regarding media interviews."

¶87 The bailiff and deputy sheriff then returned to their courtroom to get a District Court Judge for assistance. The judge entered the hallway. Respondent addressed the judge by her first name, "yelled at her," told reporters she was "drunk," and made statements such as "Why don't you go back to the bar," "Say hello to the media," "Go be a drunk judge," and "she is drunk." These statements were recorded, published by the local news media, and respondent published his comments concerning the event on his social media account. The public was given an opportunity to see video of respondent accusing a judge in the courthouse hallway of being a drunk judge.

¶88 A part of this event is shown by two videos submitted as exhibits by the OBA, and they show two different viewpoints. Complainant's Exhibit (CEX) Nos. 59 & 60. These show respondent speaking at times in a normal volume compared to the people around him, a few communications at a greater volume when addressing people at a greater distance, and few stage whispers loud enough for those close to hear him vocalize some opinions expressing negative views. He does make a couple negative opinions concerning a judge in a voice loud enough for several people in the hallway to hear. He appears to speak to a second judge in a normal voice, and then turns away and again makes critical comments concerning the first judge in a voice loud enough for several to hear, including representatives of the media. Throughout the video respondent is obviously frustrated or distressed by what he views as officials trying to limit a constitutional right to speak as he understands that right.

¶89 A deputy sheriff testified he was trained in standard field sobriety testing, had ongoing contact with the judge at the courthouse, and had never observed the judge who was subject to respondent's comments to be impaired at any time. He gave an opinion that respondent was trying to embarrass the judge in the presence of news media. An investigator for the OBA testified that no evidence was found that the judge has ever been charged or convicted of an alcohol-related offense.

¶90 The trial panel found that "[r]espondent was so disruptive" that two additional District Court Judges entered the hallway to address the noise and discovered respondent's disruptive behavior. The allegations in Count V herein include testimony that one judge left the bench while holding a hearing and went into the hallway to request respondent be quieter due to the ongoing hearing. This testimony includes a lawyer's statement that lawyers could not hear a witness in the hearing "over the noise that was going on in the hallway." The trial panel found that respondent has presented no evidence to substantiate his allegations made in the hallway against the judge who requested respondent be respectful of court staff.

¶91 The trial panel found respondent violated ORPC, Rules 3.5(d) (conduct intended to disrupt a tribunal), 8.2(a) (making a false or with reckless disregard as to its truth statement impugning the qualification or integrity of a judge), 8.4(a) (conduct in violation of the ORPC), 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice), and RGDP, Rule 1, §1.3 (contrary to prescribed standards).

¶92 Respondent argues he has a constitutionally protected right to engage in political speech and criticize members of the judiciary. He argues content of his speech as criticism is constitutionally protected, and indicates the location of his speech in a courthouse hallway is protected as a public forum and is not time-place-manner limited. 

¶93 Respondent appears to misapprehend the substance of allegations against him. First, confrontations happen in courthouse hallways. Lawyers and parties may be approached by media representatives in courthouse hallways and lawyers are expected to diminish their effect upon ongoing judicial proceedings. Lawyers are expected to take advantage of any space set aside in a courthouse for media conferences. Secondly, while a lawyer may publicly criticize the judiciary and its members, the lawyer is expected to be factually honest. We recently explained: "This Court has previously declined to discipline an attorney for making derogatory comments about the judiciary." 

¶94 These concepts are not new. For example, in Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964), the Court made the following analysis.

The use of calculated falsehood, however, would put a different cast on the constitutional question. Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity. . . . Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.

Garrison, 379 U.S. at 75 (material and citations omitted). Respondent's position asserted in his post-hearing response is that his statements were not false and were not made in reckless disregard for the truth. In other words, he had no intent or purpose to deceive or make a misrepresentation when he made accusations against the judge in the courthouse hallway in front of the local media.

¶95 The phrase "reckless disregard of the truth" in libel and defamation may "not be fully encompassed in one infallible definition." Miskovsky v. Oklahoma Publishing Company, 1982 OK 8654 P.2d 587Brown v. Hartlage, 456 U.S. 45, 60, 102 S.Ct. 1523, 71 L.Ed.2d 732, But "demonstrable falsehoods are not protected by the First Amendment." Id. Wisconsin v. Mitchell, 508 U.S. 476, 489, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993).

¶96 Respondent claimed knowledge of a judge's inebriation while diving a motor vehicle with a minor child passenger, as well as the judge's consumption of alcohol and where she consumed it as part of his characterization of the judge as "a drunk." His assertions are in the form of allegations and are not testimonial with supporting exhibits. He had an opportunity to make any record in support of his claims. A lawyer facing severe professional disciplinary consequences states he has proof in support of his assertions, and yet he does not present the proof as part of the disciplinary record. This omission from the disciplinary record diminishes respondent's credibility on this issue.

¶97 The OBA presented witnesses who testified that the judge had not appeared or been seen as inebriated. The evidence shows respondent making his allegations in the presence of the media after the judge asked him to not argue with her bailiff and requested he move away from the judge's courtroom. The evidence shows public media statements by respondent shortly after the event, and they indicate his opinion that he could not be told what to do by a judge and court personnel because of his constitutional rights.

¶98 The judge asked respondent to be respectful of her staff and then she walked away to return to her chambers while respondent continued to make comments about the judge in the presence of the media recording the event. The videos show respondent's intentional interactions with people in the presence of public media.

¶99 We also note, a courthouse hallway adjacent to courtrooms where hearings and trials are ongoing, with participants moving through the hallway and into and out from courtrooms, is not a favorable location for a traditional public gathering and is not a forum for public political speech performed in a manner that disrupts ongoing judicial proceedings. 

¶100 Based upon the record before the Court, we find clear and convincing evidence respondent violated ORPC, Rules 8.2(a) (making a false or with reckless disregard as to its truth statement impugning the qualification or integrity of a judge), 8.4(a) (conduct in violation of the ORPC), 8.4(c) (conduct involving misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP, Rule 1, §1.3 (conduct contrary to prescribed standards). The evidence is not clear and convincing Rule 3.5(d) was violated since the provision relates to a lawyer's role as an advocate.

¶101 The amended complaint states respondent violated RGDP, Rule 5, § 5.2. After receiving a grievance from the OBA, a respondent must "make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds." Id. Further: "Deliberate misrepresentation in such response shall itself be grounds for discipline." Id. Rule 5, §5.2.

¶102 Respondent's response to the grievance stated his statements were constitutionally protected, and he cited State ex rel. Oklahoma Bar Association v. Porter, 1988 OK 114766 P.2d 958

¶103 We explained a lawyer may criticize a judge, and the right to criticize is protected by the First Amendment to the U. S. Constitution. State ex rel. Oklahoma Bar Association v. Porter, 1988 OK 114766 P.2d 958Porter we explained how this right was defined by the U.S. Supreme Court.

False speech does not foster First Amendment protection, Time v. Pape, 401 U.S. 1015, 91 S.Ct. 1248, 28 L.Ed.2d 552 (1971), because there is no constitutional value in false statements of fact. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). See also, Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). There is no First Amendment protection afforded remarks critical of the judiciary when those statements are false. The state has an interest in suppressing false statements of fact referenced to the judiciary originating from members of the Bar. Disseminating false statements of fact in reference to the judiciary can be prejudicial to the administration of justice and is properly a subject for discipline under D.R. 1--102(A)(5). Misinformation from the Bar is detrimental to the public weal for the same reason that the access to information from that source may not be impeded. Members of the Bar possess, and are perceived by the public as possessing, special knowledge of the workings of the judicial branch of government. Critical remarks from the Bar thus have more impact on the judgment of the citizen than similar remarks by a layman would be calculated to have.

Porter, 1988 OK 114766 P.2d 958

¶104 The grievance filed by the judge stated respondent was disrespectful by asserting "I wasn't talking to you," and she should "go to the bar to get drunk, that's what you do." The grievance stated public media had "some of this incident recorded." A lawyer's answer to a grievance must be a full and fair disclosure of all the facts and circumstances pertaining to the alleged misconduct. The nature of the grievance is clear and respondent's citation to Porter indicates he understood that the truth of his allegation against the judge was at issue, but he claimed he would rely on "truth" without stating any facts or raising any exhibit showing the truth of his statement. In his response to the trial panel's report, respondent states the Court "should review and take judicial notice of all the evidence and documentation provided to this Court by Respondent via the Council on Judicial Complaints [regarding a named judge]. 20 O.S.2021, §1658

Count V

¶105 A lawyer, Burke, filed on behalf of his client, a candidate for Tulsa City Council, a petition alleging election irregularity. Respondent represented the other candidate for the office. The trial panel found respondent made "harassing and slanderous statements" about Burke during a press conference broadcast live by local media, and respondent posted "meritless and potentially defamatory statements about Burke on Respondent's law firm's Facebook page."

¶106 Due to the nature of an election challenge a hearing was required to be held without delay. The trial panel found: "Despite the expedited hearing, Respondent refused to cooperate so that Burke or Burke's law firm could interview witnesses because Respondent claimed he was unavailable." Respondent also sent an email to Burke stating the female lawyers in respondent's office would not meet for interviews in the presence of Burke. Respondent copied the email to an Assistant District Attorney representing the Election Board, Burke's assistant, and an associate attorney. Burke testified respondent "said that to everybody" in the case. Burke informed respondent a female lawyer and an additional lawyer in Burke's firm were available for interviewing witnesses. Respondent declined to meet with these lawyers and witnesses. Respondent was attending a cannabis convention in Las Vegas on the date of the hearing in District Court, and he "appeared to have difficulty connecting remotely to the hearing." However, respondent's client was also represented by an additional lawyer and the hearing proceeded.

¶107 During a recess at the hearing respondent caused to be filed a written motion seeking recusal of the trial judge without a prior in camera request for recusal. The judge denied the request in chambers during the recess. The morning session concluded. The afternoon session commenced and respondent connected online to the hearing and again sought the judge's recusal. The court denied the request and Burke finished with his witnesses. Respondent and his co-counsel were not ready to proceed, they requested additional time, and the trial court set the hearing for the following week.

¶108 Burke testified that due to the public statements about him made by respondent, Burke asked another attorney to send respondent a cease-and-desist letter to "stop making false and defamatory comments" about Burke. The day of the hearing on the following week Burke was in a courthouse elevator with his client and a lawyer from his firm when respondent also entered the elevator and commenced berating Burke with comments directed at Burk, and an associate lawyer, Cash, and their arguments such as "You're so f------ stupid . . . I'm going to kick your a--." Burke explained concerning respondent's comments: "He's screaming at us." A District Court Judge was also on the elevator with a member of the public watching the event.

¶109 The election proceeding concluded and Burke left the courtroom. As he proceeded through a courthouse hallway a reporter started asking Burke questions. A bailiff for one the judges asked Burke to move away from a courtroom, Burke tried to quickly end the encounter with the reporter. Burke stated: "[S]o we walk down the hallway . . . I can hear and then see Mr. Durbin . . . he was yelling about freedom of the press and First Amendment type things, but he was being very aggressive," and Burke and the client used the staircase to make a quick exit. Burke testified concerning a video of the event filmed by the media. The Amended Complaint in this Count references the allegations in Count IV of the Amended Complaint and the courthouse hallway event.

¶110 Burke also testified that respondent made requests for recusal that were in bad faith when no basis in fact of law existed for the requests. Burke stated respondent's conduct lacked civility by making false and defamatory public statements about Burke and another lawyer, Cash, in their presence and on social media platforms. Cash testified respondent is "disparaging to court staff, . . . attorneys, judges, and he gives the whole profession a bad reputation."

¶111 Burke's grievance complained of alleged unprofessional conduct by respondent in a case filed on the probate docket. Respondent raised the issue of a judge's recusal in a public hearing, and then one day later an in camera Rule 15 hearing occurred. Burke's allegations and testimony complained that respondent sought a judge's recusal on more than one case when the grounds for recusal raised by respondent were insufficient and unprofessional due to respondent's intent. For example, Burke testified respondent entered an appearance "solely for the limited and special purpose of seeking the court's recusal."

¶112 Burke also testified respondent's client was recently deceased, and she was a party in the estate case, and due to the death of respondent's client no substantive claims could be made by respondent, and no legal reason existed for respondent to be in the case as a lawyer. This is, of course, Burke's legal opinion concerning the nature of respondent's interests or potential interests in the estate litigation. Burke also testified that he filed a motion to disqualify respondent as counsel because respondent was "a fact witness in this case," and a party in a related civil case. The evidence herein is not clear on respondent's interests in the referenced civil case and its relation to the estate proceeding.

¶113 The trial panel concluded respondent violated ORPC, Rules 3.1 (meritorious claims and contentions), 3.4 (fairness to opposing party and counsel) 3.5(d) (conduct intended to disrupt a tribunal), 3.6(a) (trial publicity), 4.1 (truthfulness in statements to others), 4.4 (a) (respect for right of third persons), 8.2(a) (making a false or with reckless disregard as to its truth statement impugning the qualification or integrity of a judge), 8.4(a) (violating the rules of professional conduct), 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice); and RGDP, Rule 1, § 1.3 (conduct contrary to prescribed standards), and 5, § 5.2 (failure to provide a full and fair disclosure to all relevant facts in a disciplinary investigation).

¶114 Respondent stated he did not get a cease-and-desist letter from Burke, and if he had received such a letter it could not supplant his constitutionally protected speech. He states his recusal motions were not frivolous. Similar to the Count IV, his answer to the grievance stated: "I would further stand on the doctrine of truth and my rights protected by the 1st and 14th Amendments to the United States Constitution and those granted by 42 U.S.C. § 1983." CEX No. 77. He requested further clarification of the "laundry list of vague and ambiguous rules you [OBA] listed." Id. Similar to Count IV, in Count V respondent states he "adopts and incorporates all documents in the possession of the Judicial Complaints Commission related to Respondent's complaint and subsequent investigation of . . . [named judge], and Respondent requests that this Court refresh its recollection by reviewing said evidence." 20 O.S.2021, §1658

¶115 Burke's grievance discussed events in the Tulsa County Courthouse and related public media that are also discussed in Count IV as allegations of misconduct. Burke states respondent's statements were unprofessional. Count V allegations with a witness supporting the events in Count IV may not be used to create an additional ORPC violation for the same conduct found to violate ORPC in Count IV. The violations involved do not grow in number merely upon an increase in the number of witnesses who observed the rules violated.

¶116 Respondent violated ORPC Rule 3.4(a) and (d). Rule 3.4(d) states that: "A lawyer shall not:... (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Rule 3.4(a) states that: "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act." Respondent refused to participate when opposing counsel sought to interview witnesses for the election contest, although opposing counsel agreed to meet respondent's demand that a lawyer other than opposing counsel participate.

¶117 The evidence is not clear and convincing respondent violated ORPC, Rule 3.6(a). It states that: "(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable lawyer would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have an imminent and materially prejudicial effect on the fact-finding process in an adjudicatory proceeding relating to the matter and involving lay fact-finders or the possibility of incarceration."

¶118 The evidence is not clear and convincing that respondent violated ORPC, Rule 3.1. This Rule states as follows.

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

We recently discussed Rule 3.1 and applied it when a lawyer required opposing counsel's clients to defend against frivolous claims. 

¶119 The evidence is not clear and convincing respondent violated ORPC, Rule 3.5(d). This Rule states: "A lawyer shall not:...(d) engage in conduct intended to disrupt a tribunal." Burke's testimony stated respondent filed motions to recuse judges and respondent's asserted grounds were false. In the election case the judge denied the recusal and in the estate proceeding the recusal was granted. Burke testified that respondent sought and was granted a continuance when none was needed. Burke classified respondent's litigation strategy as disruptive.

¶120 A judge left the bench to ask respondent to be quieter in the courthouse hallway. This shows respondent's hallway comments disrupted an ongoing proceeding, but does not, by itself, show intent to disrupt a proceeding. After respondent's encounter with one judge and making accusations against her, the judge left the bench and requested he move away from the courtrooms. Respondent retreated towards elevators in a short side hallway away from courtrooms. The substance of respondent's comments directed against one judge in the hallway do not show an intent to disrupt another's judge's proceeding. This Count does not show a Rule 3.5(d) violation.

¶121 The evidence is not clear and convincing respondent violated ORPC, Rule 3.6(a). This Rule states as follows.

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable lawyer would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have an imminent and materially prejudicial effect on the fact-finding process in an adjudicatory proceeding relating to the matter and involving lay fact-finders or the possibility of incarceration.

This rule prohibits statements a lawyer "knows or reasonably should know that it will have an imminent and materially prejudicial effect on the fact-finding process." The Comment to this Rule states several contexts for the challenged statements should be considered including, but not limited to, whether (1) the proceeding is a matter of public concern, (2) a jury adjudication is involved, (3) the lawyer's statements are factual statements appearing in a public record, and (4) the statements were made in response to statements made by an opposing party. 

¶122 The allegation that respondent violated Rule 4.1 (truthfulness in statements to others), and Rule 4.4(a) (respect for right of third persons), involves respondent's transactions with persons not his clients. The evidence is not clear and convincing that respondent violated Rule 4.1. The evidence is clear and convincing respondent violated Rule 4.4(a). We first address Rule 4.1.

Rule 4.1 states as follows.

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

The trial panel found that Burke sent respondent a cease-and-desist letter concerning defamatory statements concerning Burke. The trial panel references Complainant's Exhibit No. 85 and the testimony of Burke. Day 2, Tr. at 287-289. The cease-and-desist letter is attached to the grievance. The letter states respondent made false and defamatory comments at a press conference and on social media, and these comments disparage Burke's ability to practice law. The substance or content of respondent's statements challenged by Burke and the cease-and-desist letter are not before the Court. We have two legal opinions by lawyers, Burke and the author of the cease-and-desist letter, that respondent made defamatory statements. The legal opinions by Burke and the author of the cease-and-desist letter may be correct in all respects. However, we do not have a record showing the actual content of respondent's statements used for these legal opinions.

¶123 Rule 4.1 references a lawyer knowingly making false statements of material fact or law. Application of the rule requires an examination of a lawyer's knowledge and the content or substance of the lawyer's statements. A lawyer's knowledge concerning the truth or falsity content of his statements may be derived by proper inference from another fact, may be construed as one type of factum probans used to create an "established fact" or a factum probandum of an ethical violation, and we note an expert's opinion testimony based upon scientific, technical or other specialized knowledge is usually based upon certain premises of fact. 

¶124 The trial panel found a Rule 4.4(a) violation. Rule 4.4(a) states as follows.

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

In State ex rel. Oklahoma Bar Association v. Chappell, 2004 OK 4193 P.3d 25Id. 2004 OK 41

¶125 Burke's grievance alludes to statements respondent made to the judge presiding in the estate proceeding. A transcript of the Rule 15 in camera hearing shows statements by respondent stating he did not think he could get a fair trial and he would not voluntarily appear again before this judge. Burke states the recusal effort was based upon an improper motive. The evidence is not clear and convincing that respondent violated Rule 8.2(a) (making a false or with reckless disregard as to its truth statement impugning the qualification or integrity of a judge), or Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) or Rule 8.4(d) (conduct prejudicial to the administration of justice). However, Count XII herein contains evidence concerning respondent's negative assessments of the judge presiding in the estate proceeding.

¶126 Respondent's answer to the grievance relies upon his asserted rights protected by the First Amendment. The answer does not address respondent's actions in delaying discovery in the election contest. Respondent violated ORPC Rules 3.4(a), (d), 4.4 (a), and Rule 8.4(a) (violating the rules of professional conduct), and RGDP, Rules 1, § 1.3, and 5, §5.2.

Count VI

¶127 A lawyer, Mattingly, filed a grievance with the OBA based upon respondent's litigation conduct. During a public Facebook livestream hosted by "OK4U Approved" respondent stated his intention to bring an action against Oklahoma Medical Marijuana Authority (OMMA) and its use of Metrc's tracking system. Respondent stated during the livestream "no guarantee with that black robe sitting there . . . so I know where I'm going to file it and what judge it will be hear it. So I already got--I already got the county and everything picked out of where I'm filing the lawsuit. I'm no dumb, I--I think about things like that."

¶128 Respondent filed his action in the District Court of Okmulgee County against the OMMA. Mattingly entered an appearance on behalf of Metrc, and his request for Metrc to intervene was granted. OMMA filed a motion to transfer venue. Metrc also filed a motion to transfer venue and argued (1) venue was not proper in Okmulgee County, (2) the Metrc contract contained a venue selection clause naming Oklahoma County, and (3) the public forum-shopping statements by respondent indicated Metrc could not receive a fair trial in Okmulgee County.

¶129 A hearing was held on the transfer motions in District Court of Okmulgee County in August 2021, and respondent did not appear. The assigned judge ruled respondent's absence was a consent to the transfer. The trial judge's order cited a venue statute with precedential authority and explained venue should be transferred. Approximately two weeks later, respondent livestreamed from his firm's Facebook page and stated the case had been transferred because the judge "disliked class actions" and was in "over her head." The trial panel found respondent "also suggested judicial impropriety in the transfer of the case and that an in camera request was looming."

¶130 Mattingly testified the assigned judge in Okmulgee County never made a comment on disliking class actions and there was no impropriety by the judge's actions. Mattingly testified no in camera request was made for the judge's recusal. Mattingly testified that respondent's statements about the judge would, if taken as true, significantly undermine public confidence in the judge's conduct and professionalism of the Oklahoma judicial system. He also testified respondent's statements were calculated to have a materially prejudicial effect on the fact-finding process in an adjudicatory proceeding. He also testified respondent created a website, "Sc--w Metrc," and posted profanity attacking Metrc and sold merchandise disparaging Metrc.

¶131 Respondent attempted to rent a booth and participate at a cannabis convention held in Las Vegas in November 2022. He sought to promote his Sc--w Metrc website and to raise funding for lawsuits he claimed he was going to file nationwide against Metrc. His booth rental was revoked and he was asked to leave the premises by security officers. Respondent livestreamed his initial refusal to leave the convention center and showed him cussing at the officers with a threat to sue them. Then outside the convention center respondent livestreamed his law firm's Facebook page as he distributed "F-- Metrc" t-shirts.

¶132 On November 20, 2022, respondent posted on his law firm's Facebook page where he threatened to visit Metrc at their corporate headquarters "the first week of December," "with some customers?" Further, respondent has "so much fun stuff planned?" The corporate office added security and other steps to ensure the safety of its employees. On December 10, 2022, respondent posted a video on his law firm's Facebook where he noted Metrc's presumed response to his previous statements concerning corporate headquarters and how he had intentionally fooled them and he had gone to Aruba instead.

¶133 In May 2023, respondent filed an action against the OMMA in the District Court for Ottawa County. Metrc made a special appearance and moved to dismiss and transfer venue. Respondent issued a subpoena to "Jack Mattingly" to testify.

¶134 Respondent posted a photograph on his law firm's Facebook page of Mattingly's eighty-year-old father wearing a bathrobe outside his home at night. The photo was taken by a process server. A process server telephoned his father, asked for his father's location, and Mattingly's father went home when the process server did not arrive at that location. Mattingly's father was not counsel for Metrc. Mattingly testified that respondent had appeared to confuse Mattingly with his father. Respondent posted on his website that the attorney for Metrc "tried to evade service," "fled from his office," the process server "tracked him down at home," and suggested that Mattingly "please bring that beautiful red house robe" when Mattingly next appeared. Respondent posted he had "$5.00 ready to go" to purchase the robe.

¶135 Mattingly testified that respondent's actions in a case created unrealistic and unhealthy expectations from his clients and Oklahoma medical marijuana licensees following the litigation, and respondent "publicly excoriating the bench with untrue statements" brings public dispute upon lawyers and judges.

¶136 Respondent sent the OBA a response to the grievance. He alleged other lawyers who should have been disciplined for misconduct were not disciplined and the OBA was selectively proceeding against respondent. He also included his reliance upon his First and Fourteenth Amendment rights, and OBA v. Porter, supra.

¶137 The trial panel found respondent violated ORPC, Rules 1.3 (diligence), 3.1 (meritorious claims and contentions), 3.2 (expediting litigation), 3.3 (candor to the tribunal), 3.5 (impartiality of the tribunal), 3.6 (trial publicity), 4.4(a) (respect for rights of third persons), 8.2(a) (making a false or with reckless disregard as to the truth statement impugning the qualification or integrity of a judge), 8.4(a) (violating the ORPC), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rules 1, § 1.3 (conduct contrary to prescribed standards), and 5, §5.2 (failure to provide a full and fair disclosure of all relevant facts).

¶138 Generally, the content of a person's speech may receive First Amendment protection from governmental restriction, and while the protection may include speech containing expletives, in some instances a First Amendment right to create a public "expletive-laden tirade" may be balanced against other legally cognizable interests. 

¶139 Respondent argues his venue selection and forum shopping was proper and transparent. His public statement indicated the success of his cause of action depended upon which judge adjudicated his claim and not the legal merits of his claim. Respondent's statement challenges the idea that a legal proceeding in our State is based upon something other than the legal merits in that proceeding. He attempts to raise new facts in his post-hearing response. He argues his statements publicly attacking the judge as one who "disliked class actions," and in "over her head," are his opinions, and because they are opinions, they cannot be used against him for the purpose of discipline. He is incorrect. The combined effect of respondent's litigation conduct and public statements in the litigation described in this Count, the venue issue and forum shopping, and false statements attributed to a judge presiding in one of his cases show respondent violated ORPC, Rules 1.3, 3.1, 3.2, 3.3, 3.5, 8.2(a), 8.4(a), and 8.4(d), and RGDP Rule 1, § 1.3. Respondent's answer to the grievance relying upon a general assertion of constitutional rights is not a full and fair response. His response to the grievance violates RGDP, Rule 5, §5.2 We do not find clear and convincing evidence of an ORPC Rule 3.6 violation.

Count VII

¶140 Respondent livestreamed from his law firm's public Facebook page while he, and others, including a videographer, visited an office for the Oklahoma Bureau of Narcotic and Dangerous Drugs (OBNDD). He spoke with an OBNDD employee and "demanded records he had previously requested or that he be allowed to examine the records on site." The employee stated respondent's request for records was still being processed. Respondent informed the employee that respondent was "going to call the police and report him for violating the Open Records Act." Respondent "became aggressive and verbally abusive" and told the employee "he looked like a f--ing schmuck," and called him a "piece of s--" and a "motherf------ piece of s-- scumbag."

¶141 Four officers from the Oklahoma City Police Department (OCPD) arrived as well as two Oklahoma Highway Patrol Officers (Troopers), and a Oklahoma Highway Patrol (OHP) Supervisor. Respondent informed the officers of his Open Records Act request. The employee stated the request was being processed. Respondent asked the officers to arrest the employee. The OHP Supervisor informed respondent they were not going to arrest the employee, and testified that respondent "acted in a belligerent, vulgar, and verbally abusive manner towards the Troopers." Then when "respondent bumped" into one of the troopers, respondent accused the Trooper of assaulting respondent and threatened to sue the Trooper.

¶142 The OHP Supervisor completed a report of the event including assessments of respondent's rude and unprofessional statements designed "to escalate the situation by calling officers names, and cussing at officers," and respondent appeared to be "attempting to use the legal system and social media to annoy, intimidate, and harass" an employee of the OBNDD, as well as the OBNDD, OCPD, and OHP. The Supervisor's report stated the confrontation with the OBNDD employee lasted more than two hours, and the OHP Troopers and Supervisor were required to be present more than one hour.

¶143 The respondent's confrontation at the OBNDD was reported in the Tulsa World newspaper. A Deputy General Counsel for the Oklahoma Attorney General testified concerning proper procedures for an Open Records Act request. He testified respondent's conduct was not reasonable. He opined that respondent was using a law license "as a tool to disrupt the OBNDD's ability to work." An OHP Trooper testified that in 24 years of law enforcement he had never seen an attorney act like respondent, and when he arrived at the OBNDD his first thought was that respondent was having a "mental issue."

¶144 The OHP Supervisor testified he had a previous experience with respondent acting similarly during a recent confrontation at an office for the Oklahoma Medical Marijuana Authority (OMMA) discussed in Count XII herein. The Supervisor discussed the effect such confrontations of verbal abuse and harassment had on state employees, and employees experiencing trauma from respondent's abuse. Respondent's answer to the grievance stated the grievance was "garbage," "contains no actual allegations" and he had "no meaningful opportunity to respond."

¶145 The trial panel found respondent violated Rules 4.4(a) (respect for rights of third parties), 8.4(a) (violating the ORPC), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rules 1, § 1.3 (conduct contrary to prescribed standards) and 5, §5.2 (failure to provide a full and fair disclosure of all relevant facts).

¶146 Respondent accused an OBNDD employee of a misdemeanor in the performance of his employment in handling public records because the employee stated he did not have, and could not give, the records to respondent at that time. Respondent's approach to this issue is that he has a First Amendment right to use the internet and be obnoxious, demeaning, confrontational, and may self-determine a government employee's "wilfulness" in the performance of the employee's occupation and publicly accuse the employee of a criminal misdemeanor. 

¶147 These related issues may arise, for example, in the context of one person's First Amendment speech right versus another's right to be free from slander or libel, as well as one person's First Amendment speech right versus another's right to free from a breach of the peace that is not constitutionally protected. 

¶148 A lawyer's professional duties of respect for others and avoiding a reckless disregard for the truth is not necessarily measured by comparing the lawyer's speech to elements in slander and libel actions when they are limited by First Amendment restrictions on such actions brought by "public officials" against their accusers. As previously mentioned, courts have discussed a lawyer's criticism of the judiciary and legal officers requires a different analysis: "'Reckless disregard for the truth' does not mean quite the same thing in the context of attorney discipline proceedings as it does in libel and slander cases . . . there is a distinct difference between the two types of cases." 

¶149 Second, not every public employee is a "public official" or "public figure" for the purpose of applying First Amendment protection to speech. 

¶150 For example, one federal appellate circuit states: "A public official, then, is a person who 1) holds a position of influence over issues of public importance, as defined by the position's inherent attributes; 2) has special access to the media as a means of self-help; and 3) assumed the risk of diminished privacy upon taking on the position." 

¶151 The record is clear and convincing that the OBNDD state employee stated to respondent that his request for documents was being prepared and respondent would receive requested documents. Respondent accused the employee of a crime without any expressed concern whether the employee was a "public official" or "public figure" for the purpose of respondent asserting his First Amendment rights. This is not an isolated incident of respondent accusing government employees of misdemeanors when he was not immediately given copies of records. He was not parsimonious with his accusations of misdemeanors. He included not only whoever was tasked to assist him when he appeared, but also security guards who he deemed were blocking a legally protected access to records.

¶152 Respondent's actions show a lack of respect for how his First Amendment rights are defined and coupled with the rights of others. We find no First Amendment issue in this Count providing respondent with a First Amendment right that negates his professional obligation to show respect to third parties. 

Count VIII

¶153 Respondent visited the City Hall in Tulsa, Oklahoma, for the purpose of filing an Open Records Act request. Respondent livestreamed his entry into the building and the resulting confrontation. After entering the building an exchange between respondent and various security officials occurred and lasted approximately 45 minutes. The controversy initially started because respondent declined to provide his ID and "sign-in." He identified himself as I'm "trying to hold people accountable," and "I'm that guy that sued you." Respondent expressed that he did not know the name of the official or the location of the city department he wished to visit in the building.

¶154 A security officer phoned certain people attempting to find someone for respondent to talk to, and as the time passed respondent appeared to become frustrated by the absence of a municipal employee who could assist him and the presence of security guards restricting his access. The grievance centers on respondent's demeaning comments made to the private security employees. For example: "You act all smug," "Hey I'm talking to you," "I'm going to call you Paul Blart, you look all angry, Do you beat women, you look like you would with that face, you look all angry," "Is that supposed to intimidate me? You standing here, Say hello to all the people on the internet that are looking at your ugly mug." "I can't believe they let you carry guns." "You are staring at me . . . You into guys? do you want to go on a date?" He then offered an opinion that a security officer watching him must want to have sex with respondent because "the security officer would not stop watching respondent." "You're like a dog in heat, gracious you are ugly." "You're not speaking...You know sign language?... He needs a date." "He looks like the kind who citizen complaints have been filed against." "You go to Paul Blart University?" Respondent made several references to "mall cops" and, in his view, their lack of education. Respondent questioned whether a security officer was actually hearing impaired because he would not use sign language with respondent. Respondent was informed the security officer could read respondent's lips when he talked.

¶155 Part of the confrontation involved security officers informing respondent he could not go to certain floors in the building unless he had an appointment. Respondent responded with references to the Open Records Act. Respondent expressed his disappointment that security personnel could not inform respondent about the location in the building for the city department respondent desired to access. The confrontation in the lobby ended when respondent tried to access an elevator and a security officers blocked his access. Respondent stated on his livestream the security official had just "laid hands on him," and respondent was going to leave the building and phone the municipal police.

¶156 Respondent livestreamed that he was in the lobby of a municipal building and the Constitution gave him the right to say anything he wanted concerning the private security personnel working in the building. Respondent livestreamed that private tenants were in the building. The video shows several times in response to questions from respondent, the security personnel "do not receive their paychecks from the City of Tulsa."

¶157 In respondent's ongoing livestream he accused the security personnel of violating the Open Records Act and committing a misdemeanor. Again, as in the previous Count, respondent indicates he possesses a First Amendment right to use the internet and be disrespectful, obnoxious, demeaning, confrontational and publicly accuse the security guards, as agents of the City of Tulsa, or if they were private security guards, of committing a criminal misdemeanor in the performance of their occupation.

¶158 The OBA alleged respondent's Open Records Act requests were abusive, and he filed a civil action in Tulsa County related to the Open Records Act requests. The substance of those requests is not before us, and we do not analyze whether they were abusive or improper. The OBA refers to a District Court case brought by respondent and this case was dismissed without prejudice. Respondent's answer to the grievance is not a full and fair disclosure.

¶159 The trial panel found respondent violated ORPC, Rules 4.4(a), 8.4(a), 8.4(d), and RGDP, Rules 1, §1.3 and 5, §5.2. We find respondent's conduct violated ORPC, Rules 4.4(a), 8.4(a), and RGDP, Rules 1, §1.3 and 5, §5.2. We do not find a Rule 8.4(d) violation shown by clear and convincing evidence.

Count IX

¶160 Respondent was scheduled to appear before District Court Judge Priddy on an emergency motion where respondent was seeking a temporary injunction against the City of Tulsa. Minutes before the hearing respondent entered the judge's office to object to counsel appearing on behalf of the City. Judge Priddy told respondent to lower his voice and return to the courtroom where pending matters would be addressed. He left the judge's office but returned a few minutes later and stated to the clerk respondent was withdrawing his motion.

¶161 When Judge Priddy took the bench, respondent had left the courtroom, and the City of Tulsa informed the judge that respondent had stated his intent to withdraw the motion. No substantive argument was heard, a court minute drafted, and City of Tulsa's motion for costs was taken under advisement until the proper motion was filed.

¶162 Respondent returned to Judge Priddy's office thirty minutes later and accused her of having had an improper ex parte communication with counsel for City of Tulsa and that an incorrect court minute was made. Respondent was livestreaming on his cell phone. Court staff was concerned for their safety and telephoned security. Judge Priddy stated that the court minute should reflect what happened in the courtroom and not what happened in chambers, and that there was no "order." The lawyer appearing for the City of Tulsa testified the court minute was accurate.

¶163 Respondent threatened to file a grievance against the lawyer appearing for the City of Tulsa, and posted on his law firm's social media page a caricature photo purporting to be the lawyer for the City of Tulsa. Respondent made a social media post that the judge altered a minute order "to an absolute lie" and stated "black robes in Tulsa County and the 14th Judicial District are acting like they wear white hoods." He stated the Tulsa County judiciary was corrupt.

¶164 Judge Priddy's bailiff testified about an email respondent sent to the 14th Judicial District and local media outlets on January 31, 2024. Respondent stated Judge Priddy has been "bought off by the silk stocking law firms." Respondent provided no evidence in support of this statement.

¶165 In a media livestream on January 26, 2024, respondent stated "We're going to keep working on . . . the Priddy corrupt judge . . . Judge Priddy, you destroyed court records. You're a felon as far as I'm concerned with what you did." The evidence presented in Count XII also includes an accusation against Judge Priddy stating she destroyed records. Respondent supplied no evidence in the disciplinary proceeding in support of these statements.

¶166 The bailiff also testified that respondent had stated he had recorded a court proceeding wherein he was seeking an in camera recusal of Priddy. This recording was made in violation of a court recoding policy. Judge Priddy also testified that respondent recorded the in camera hearing.

¶167 Respondent published Priddy's office telephone number on respondent's social media page, and telephone calls were received complaining about Judge Priddy with the callers using language respondent had used against the judge. Respondent filed an action in Tulsa County on January 17, 2024, against Judge Priddy and others. Respondent did not serve process upon defendants and the action was dismissed.

¶168 The trial panel found respondent violated ORPC, Rules 3.3(a)(1) (lawyer shall not knowingly make a false statement of law or fact to a tribunal), 3.3(d) (in an ex parte proceeding, a lawyer shall inform the tribunal of all material facts), 4.4(a) (respect rights of third persons), 8.2(a) (lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a judge), 8.4(a) (violate or attempt to violate the ORPC), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, §1.3 (conduct contrary to prescribed standards).

¶169 Respondent states he had an actual reasonable belief for his statements, and professional discipline cannot be imposed unless the OBA proves respondent acted with actual malice. Respondent is incorrect. We explain herein some of the differences between the actual malice analysis in "public figure" defamation jurisprudence and public statements made by a lawyer used for professional discipline. Review of the record also shows respondent's beliefs concerning the judge were not reasonable based upon the factual circumstances. The authority cited herein in other Counts concerning statements by respondent against judges applies equally in this Count. We agree with the trial panel that respondent violated ORPC, Rules 3.3(a)(1), 3.3(d), 4.4(a), 8.2(a), 8.4(a), 8.4(c), and 8.4(d), and RGDP Rule 1, §1.3.

¶170 In addition to the trial panel's findings, the OBA's amended complaint also alleged respondent violated RGDP, Rule 5, § 5.2 for a failure to provide a full and fair disclosure of all relevant facts. Respondent's response to the grievance pointed to the allegations in his District Court action against Judge Priddy and others, and an application for prohibition filed in this Court. disclosure of facts concerning serious allegations against a judge, including an allegation of a felony, is not provided in a response to a grievance by referencing allegations in other proceedings brought by the respondent. We find a violation of RGDP Rule 5, § 5.2.

Count X

¶171 Respondent went to City Hall, City of Tulsa, which he recorded and posted live on Facebook. Respondent informed security staff he needed to speak to several people, naming some and referencing others by their employment position. He had no appointments to speak to anyone. An employee told respondent a request had been made for someone to come and speak to him.

¶172 Respondent was told that some of the departments did not have anyone available to speak to him. Respondent demanded to speak with a representative from each department and cited the Open Records Act. An employee of the finance department, Basgall, came out to speak to respondent. Respondent stated he wanted to inspect certain records regarding every expenditure related to certain funding. He stated he was not going to fill out forms. The employee took notes of what he wanted, told him some of the records were not immediately available, and it would take time to assemble them. Respondent stated he wanted to look at the documents immediately and he would review them with her.

¶173 Basgall stated she would print out what she could. Respondent told her that a violation of the open meetings or records act is a misdemeanor punishable by a fine and a year in jail. He told her if she was charged with this misdemeanor then "per city policy" "the city will not defend you." Basgall asked for contact information for when the records were assembled. Respondent insisted that he wanted to see the records now.

¶174 Another employee, Director of Asset Management, approached and respondent told him to step back, and when he did not, respondent asked him "if he wanted a date." Respondent told him he would deal with this employee's issues, whatever they were, later, and respondent then stated: "I am running this meeting." Respondent then moved his camera closer.

¶175 Basgall said she could get the requested information together if respondent would "fill out the form." Respondent offered the advice that she should just refuse to supply the information and respondent would sue both employees. Respondent stated he had a detailed list of documents, and he needed to go over the list with her. He stated she might alter the records and he did not trust her to supply correct records. He stated he needed the documents "right this minute." He stated: "I want to inspect them now." She stated it would take time "to pull the documents." Respondent asked Basgall if she were going to provide the records. She responded she did not have them at that time. Respondent stated he was going to sue her, did not need her anymore, and needed to move on to the next person. Respondent was advised employees in other departments were not available. He left the building threatening to sue everyone.

¶176 The Director of Asset Management filed a grievance complaining respondent used intimidation, threats, and lawsuits. The OBA mailed on April 20, 2023, a letter requesting a response to the grievance within twenty days. On May 22, 2023, respondent sent an email to the OBA. He asserted the grievance was without any factual basis.

¶177 The OBA characterized respondent's Open Records Act request as unreasonable for immediate fulfillment. He sought records of all "ARPA" federal grant money for the City of Tulsa and Gilcrease funding. Part of the Open Records Act states the following.

6. A public body must provide prompt, reasonable access to its records but may establish reasonable procedures which protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions. A delay in providing access to records shall be limited solely to the time required for preparing the requested documents and the avoidance of excessive disruptions of the public body's essential functions.

51 O.S.2021, §24

¶178 The trial panel concluded respondent violated ORPC, Rules 3.3(a)(1), 3.3(d), 4.4(a), 8.2(a), 8.4(a), and RGDP Rule 1, §1.3. We agree. Additionally, respondent's response to the grievance was not made within the twenty-day time required time, and respondent violated Rule 5, §5.2.

Count XI

¶179 The OBA received a grievance against respondent by an advocate for cannabis related legislation. She testified that while she was at the State Capitol discussing pending legislation with state legislators, respondent appeared and started recording her for his ongoing livestream on his firm's Facebook account and that he added untruthful commentary concerning her discussion with the legislators. She stated respondent made a racial slur against her based upon her Mexican ancestry.

¶180 Respondent sought to meet with Governor Stitt during one of respondent's visits to the State Capitol. He was told the Governor was not available. Respondent signed a sign-in sheet, with his name and phone number, wrote "F-- you," and handed it to the receptionist. He then made comments to his Facebook viewers that the Governor was "probably looking at kiddie pornography... that guy is such a piece of scum ... I don't have any evidence of that, it's just a wild guess but he seems like the kind of guy that would do that."

¶181 Respondent, while streaming to viewers, went into a 911 Authority meeting and announced to a large group of people that he had questions concerning an alleged sexual relationship between a named Senator and a former Director of the Oklahoma Medical Marijuana Authority. He then went to a different Senator's office and announced he was present to have a meeting to inquire into her alleged sexual relationship with a former Director of the OMMA. The OBA challenges other similar statements by respondent while visiting the State Capitol.

¶182 The trial panel found respondent violated ORPC, Rules 4.1 (truthfulness in statements to others); 4.4(a) (respect of rights of third persons), 8.4(a) (violate or attempt to violate the ORPC); 8.4(c) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), RGDP Rules 1, §1.3 (conduct contrary to prescribed standards); and and 5, §5.2 (failure to provide a full and fair disclosure of all relevant facts).

¶183 We disagree. We must be concerned on the balance between a citizen's duties as an attorney and the attorney's right to speak freely on matters of public concern. In State ex rel. Oklahoma Bar Association v. Wagner, supra, we found three circumstances that are important for this balance: the nature of respondent's speech, the place of his speech, and whether the content and place of the speech are tied to a unique role or function of a lawyer as opposed to the lawyer as a citizen.

¶184 The United States Court of Appeals for the Ninth Circuit has observed that political speech often takes the form of lies, name-calling, and various forms of mud-slinging. United States v. Bagdasarian, 652 F.3d 1113, 1114 (9th Cir. 2011). An oft-repeated theme is accusations of romantic liaisons, and as noted by the court, Andrew Jackson was accused of adultery and murder, and opponents of Grover Cleveland chanted slogans that he had fathered a child out-of-wedlock. Id. First, respondent's statements concerning public officials who are legislators and their alleged sexual liaisons are not like his statements alleging a judge is driving while intoxicated and inebriated during the work-day, or a judge improperly altering public documents. Second, respondent's statements were made in the State Capitol where legislators, lobbyists, and citizens gather to discuss, argue, occasionally sling metaphorical mud as part of a political process, and are often subjects in media reporting while engaged in these activities. Third, a member of the OBA may be viewed as possessing special knowledge of the workings of the judicial branch of government. State ex rel. Oklahoma Bar Association v. Porter, supra. However, we see no reason to conclude a lawyer is perceived to have a special knowledge of the workings of particular members of the legislative branch or alleged sexual liaisons involving the legislators.

¶185 We find no clear and convincing evidence for violations found by the trial panel in this Count. The response to the grievance identified the political speech and we also find no violation of RGDP, Rule 5, §5.2.

Count XII

¶186 Thompson is a lawyer for the Oklahoma Medical Marijuana Authority (OMMA) and she filed grievance against respondent. Respondent attended an administrative hearing at the OMMA wearing his "Where's Waldo" red and white striped shirt and a baseball hat stating "No F---- GIVEN." On the way to the hearing he livestreamed and encouraged his viewers to attend. He stated a judge in a "normal court" would be unhappy if you booed or clapped and those judges have the power to send you to jail, but "I wanted to let you know and remind you just as a legal courtesy to you all, this judge [the administrative law judge] has no power to send nobody to nowhere. So, keep that in mind." He told his viewers they had a constitutional legal right to record the administrative proceeding. After the hearing respondent livestreamed "We SHUT OMMA DOWN" and claimed he caused OMMA to close and the Authority's lawyer to "leave crying" because she had a bad day in court. The trial panel found both of these statements to be false.

¶187 During the livestream respondent referred to the Director of the OMMA as an "idiot attorney," and attorney Burke was "an absolute and complete crook" "along with Judge Glassco" in Tulsa County. Respondent claimed he was going to file "a RICCO case" against Burke and Judge Glassco but had not been able to "finish it cause the OMMA went crazy." On his law firm's Facebook page respondent stated "Today I made very clear that the OMMA and the administrative law judge are corrupt." He engaged in name-calling two additional lawyers, John Wiggins and Jack Mattingly, and he told viewers to file OBA complaints against both of them. Respondent referred to the administrative law judge as "Captain Kangaroo." Respondent made statements he was "going after" the personal assets of the Director of the OMMA and opposing parties, and assets of Metrc as well.

¶188 Respondent filed a motion for the administrative judge to recuse. Respondent belittled the judge, accused him of engaging in ex parte communications, and then stated in the open proceeding that the judge had been "bought and paid for" by the OMMA. Respondent told the judge: "I understand that you don't much care about civil rights, and that really shocks me, given the fact that you appear to be African American descent. And the fact that June 19th is coming up. I figured I'd mention that civil rights are an important thing. Not to you, though, Judge, because you don't really care about people's procedural . . . and due process rights. You don't care at all." The trial panel found no evidence to support respondent's statements against the judge.

¶189 Upon concluding his verbal attack upon the administrative judge, respondent stated the hearing was at an end and instructed his group of clients and supporters to walk out. He re-entered the courtroom and accused the hearing officer of engaging in an ex parte communication and corruption with the hearing clerk. He posted photos of OMMA's counsel on Facebook and on social media and likened her, the OMMA, and OMMA employees to "Nazis who closed the door to the gas chambers."

¶190 Respondent answered Thompson's grievance by claiming Thompson, the administrative judge, and OMMA lawyers were working together to "intentionally deprive people of their rights to due process," and were "utiliz[ing] administrative actions to blackmail individuals into giving up valid legal claims against third parties, like Metrc." Respondent's answer to the OBA included: "Bar complaints against yourselves and these attorneys are forthcoming. I am in the midst of drafting all of the litigation and complaints and will forward upon receipt."

¶191 Thompson supplemented her grievance with concerns about her personal safety. Thompson related that in both administrative and district court proceedings respondent made frivolous pretexts for seeking judges' recusals. She stated respondent did not meet court deadlines in specific cases she appeared in as opposing counsel. She testified respondent's delaying tactics wasted OMMA's resources. In one case respondent stated he was filing an action in district court, filed it two months later in July 2023, then promptly requested the judge to recuse (Stinson grievance, Count XIV) for frivolous reasons. Respondent's client remained suspended pending an OMMA revocation hearing that was not scheduled until late September 2023, and respondent missed deadlines in the case which resulted in Thompson seeking a summary adjudication against the client.

¶192 In another case, respondent failed to request a new hearing on an emergency order after his request to recuse the administrative judge was denied, and as a result his client remained suspended, unable to operate, and ultimately surrendered his license by consent order. She also addressed respondent's litigation failings raised in Count XIX, the Brixey grievance.

¶193 The trial panel found clear and convincing evidence respondent violated ORPC, Rules 3.1 (meritorious claims and contentions), 3.3(a)(1) (candor toward the tribunal), 3.3(d) (during an ex parte proceeding a lawyer shall inform the tribunal of all material facts), 3.5 (a lawyer shall not engage in conduct intended to disupt a tribunal), 4.4(a) (respect for rights of third persons), 8.2(a) (a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a judge), 8.4(a) (violate or atempt to violate rules of professional conduct), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP, Rule 1, §1.3 (conduct contrary to prescribed standards).

¶194 Respondent's post-hearing response requests the Court take the trial panel evidence "with a grain of salt." He states "witnesses lie." He states his clients were pleased with his representation. He seeks to inject new or additional facts into the proceeding. He may not challenge facts before the trial panel with new or additional facts raised several months after the trial panel proceeding. State ex rel. Oklahoma Bar Association v. O'Neal, supra. He may challenge credibility of witnesses by a proper legal argument using the facts in the record, and merely asserting as a fact that witnesses lied is insufficient.

¶195 Respondent states his comments to the administrative law judge are constitutionally protected parody. He repeats that the First Amendment requires the OBA prove actual malice by him when he criticized judges and lawyers. Again, respondent does not address the factors of public speech as a licensed lawyer criticizing judiciary and legal officers, speech subject to a professional discipline proceeding, and the "public official" or "public figure" element in defamation cases. For one example, a Maryland court distinguished the "actual malice" analysis from New York Times Co. v. Sullivan, supra, a defamation case, and a lawyer discipline proceeding.

In a lawyer discipline proceeding where a court may "determine what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances...[and such] strikes a constitutionally permissible balance between an attorney's right to criticize the judiciary and the public's interest in preserving confidence in the judicial system: Lawyers may freely voice criticisms supported by a reasonable factual basis."

Att'y Grievance Comm'n v. Frost, 437 Md. 245, 85 A.3d 264, n.11, 276 (2014) (contrasting New York Times v. Sullivan, supra, and Standing Comm. v. Yagman, 55 F.3d 1430, 1438 (9th Cir.1995)). Frost cites additional courts agreeing with this analysis. 

¶196 The OBA presented evidence showing a lack of a reasonable factual basis for respondent's speech. We do not address evidence concerning the Stinson and Brixey grievances since they are raised in Counts XIV and XIX. We find the evidence is clear and convincing respondent violated ORPC, Rules 3.1 (meritorious claims and contentions), 3.3(a)(1) (candor toward the tribunal), 3.5 (a lawyer shall not engage in conduct intended to disrupt a tribunal), 4.4(a) (respect for rights of third persons), 8.2(a) (a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a judge), 8.4(a) (violate or attempt to violate rules of professional conduct), 8.4(d) (conduct prejudicial to the administration of justice), RGDP, Rule 1, §1.3 (conduct contrary to prescribed standards).

¶197 We do not find clear and convincing evidence for an ORPC, Rule 3.3(d) violation apart from the evidence used for Counts XIV and XIX herein, and evidence presented as part of this Count is considered in appropriate subsequent Counts.

Count XIII

¶198 A District Attorney filed a grievance against respondent. The District Attorney (D.A.) and respondent were at the initial arraignment for respondent's client charged with drug trafficking, Respondent handed a motion to the D.A. regarding dismissal and the D.A. did not respond because the docket was about to commence. Respondent then inquired: "What are you, stupid?"

¶199 Later the same day, respondent posted on his social media a photo of the D.A., with a statement D.A. had called his clients "scum," and stated "prosecutors get off on enjoying sending honest hard working people to jail." The D.A. expressed his concern the social media posts could taint the prospective jury pool.

¶200 The arraignment and posts occurred on September 1, 2023. On September 18, 2023, respondent posted to his law firm's social media account calling D.A. a "scumbag," "an idiot," "an absolute and complete f------ moron," a "whiney, kiss-a-- little baby," and a "scumbag piece of s--." In the video, respondent states the D.A. shouldn't be in office and "what you're doing is criminal and we're going to prove it."

¶201 A criminal investigator present in the courtroom on September 1, 2023, testified she did not hear the D.A. call respondent any names, but she did hear respondent make derogatory remarks to the D.A. A second witness in the courtroom, an employee of D.A., stated the D.A. never called anyone a scumbag, and she heard respondent "yelling and cussing" at the D.A.

¶202 The trial panel found respondent violated ORPC, Rules 3.6 (extrajudicial statements), 4.4(a) (respect for rights of third persons), 8.2(a) (a lawyer shall not make a statement the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification of public legal officer), 8.4(a) (violating ORPC), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, § 1.3 (conduct contrary to prescribed standards).

¶203 The extrajudicial statements in this Count relate to respondent's representation of a client in a criminal proceeding. A recent opinion by the U.S. Court of Appeals for the Fifth Circuit discussed the issue of pretrial publicity, tainting a jury pool, and lawyer discipline.

In the context of criminal trials, an individual's right to free speech must be balanced with the state and the defendant's interest in a fair trial. . . . "Intense publicity surrounding a criminal proceeding," otherwise referred to as "trial by newspaper," "poses significant and well-known dangers to a fair trial." . . . The most significant of these dangers is the possibility that pretrial publicity will taint the jury venire. . . . Courts "must therefore balance the First Amendment rights of trial participants with our 'affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.'" . . . Citing this concern, the Supreme Court has upheld stronger limitations on the speech of "those participating before the courts" as compared to members of the press.

In re Goode, 821 F.3d 553, 55--60 (5th Cir. 2016) (citations omitted). The U.S. Supreme Court has stated a State Bar Association may examine a lawyer's extrajudicial comments for likelihood of material prejudice and proscribe such speech. United States v. Brown, 218 F.3d 415, 426 (5th Cir. 2000) (explaining Gentile v. State Bar of Nevada, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991)).

¶204 In Collier v. Reese, 2009 OK 86Id. ¶18, 223 P.3d at 974. Additionally, we relied on Gentile v. State Bar of Nevada, supra, and stated this balance prohibits a lawyer participating in litigation from making extrajudicial statements which would have a prejudicial effect on the fact-finding process. Id. ¶19, 223 P.3d at 975.

¶205 Respondent posted on social media the D.A. called his clients "scum," and stated "prosecutors get off on enjoying sending honest hard working people to jail," and "what you're doing is criminal and we're going to prove it." A criminal defense lawyer attacking the motive or justification of a criminal prosecution against the lawyer's client is nothing new. 

¶206 The additional evidence against respondent in this Count focuses on an attorney for a criminal defendant name-calling a District Attorney, and what is, from this record, a hollow and empty promise by the same attorney that the District Attorney's alleged unspecified misdeeds will be exposed at some undetermined future date. We find a lack of clear and convincing evidence to show violations of ORPC, Rules 4.4(a), 8.2(a), 8.4(a), 8.4(c), 8.4(d), and RGDP Rule 1, §1.3. We find no violations in Count XIII.

Count XIV

¶207 District Court Judge Sheila Stinson filed a grievance against respondent. Respondent filed an application for emergency ex parte relief on behalf of his client. The judge set the hearing for the same day at the end of her docket due to respondent's allegation of an emergency. Prior to commencement of the hearing, the judge was informed by security for the Courthouse that this client's lawyer, and persons associated with him, had a tendency to record court proceedings. The judge directed sheriff's deputies to prohibit anyone from entering the courtroom with a recording device. The local rules for this District Court prohibit recording equipment and recording unless certain conditions are met. 

¶208 The judge started calling her regular docket and respondent intervened and requested people be allowed in the courtroom. The judge responded people could enter but not their recording devices. Respondent objected, and tried to negotiate with an offer to hold the cell phones. The judge's order prohibiting recording devices applied to several dockets that day. Attorneys could possess a cell phone but they were required to ensure no recording was occurring.

¶209 The judge testified that she had told people on other occasions not to record using a cell phone. She testified that she had not met respondent before that date. She explained the rule applied to all litigants and the public entering the courtroom. She had several matters to handle on different dockets. Respondent did not wait for his case to be called and interrupted the judge to negotiate handling his supporters' cell phones. He interrupted several cases involving other people, and argued with the judge. Day 6, Tr. at 1036-37. He accused the judge of singling out his supporters for different treatment. She testified she felt sorry for people waiting for their case on the name change docket and those waiting for an automobile title order to be signed, because "they're watching this spectacle of what's happening, and so I was working so hard just to get those people cleared out." Day 6, Tr. at 1036. However, before she could complete her regular docket, respondent asked the judge to recuse in respondent's case and the request came as an interjection by respondent into another person's case.

¶210 The judge completed her docket. She then started the Rule 15 in camera recusal hearing. Respondent sought recusal because of the order not allowing recording devices. She explained the order applied to everyone. Respondent argued that the order "was picking a side." She asked the OMMA if it wanted a recusal, and the OMMA said no recusal was necessary. Respondent continued to argue with the judge, and was talking over the judge. The judge told respondent "You're going to stop talking while I'm talking." She denied the request to recuse. She asked respondent if he intended to file a Rule 15 motion and set it on her docket. Respondent stated, "No, there's other proceedings I can initiate to deal with Your Honor and this ruling." He then mentioned using a federal court to obtain relief. Day 6, Tr. at 1041.

¶211 The judge then stated respondent was vocalizing untrue observations, that is, observations not actually occurring; for example, addressing the judge and stating "Why are you yelling?" when she wasn't. The judge explained with the following.

[Then] he started kind of dictating -- or dictating to the court reporter what I was doing, which none of that was happening. I wasn't -- he wanted to know why I was yelling, why I was shaking my head. He makes different comments, but as he's saying them I'm thinking to myself I'm not doing any of those things. I had really tried to stay calm, not raise my voice, do anything, and he was doing it for purposes of the record. And then he ultimately asked me for my recusal the second time.

Day 6, Tr. at 1042. The judge responded with: "Okay. Let's have another Rule 15 proceeding." Respondent starts talking over the judge again, and the judge says everyone should take a short break and the judge leaves the bench. After a ten-minute break the judge returned to the bench and a second Rule 15 in camera proceeding commenced. Respondent stated his grounds for recusal were the judge's facial expressions and the judge's "demeanor." The second request for recusal was denied.

¶212 Respondent was again asked if he intended to file a Rule 15 motion. He responded he needed to ask his client who was not in the courtroom, and another short break occurred. Respondent returned from the break and stated "Yes, we're going to seek your continued recusal and we're going to take this to federal court as well." The judge responded and stated she was going to stay the case pending his presentation of the motion to recuse. A motion for recusal was not filed and respondent dismissed the case six days later.

¶213 Respondent had subpoenaed several persons to the emergency hearing. The judge testified there were at least six, including the OMMA's executive director and general counsel, and"[t]here was a whole row of people that had been subpoenaed for that TRO hearing." They were all subpoenaed by respondent.

¶214 When respondent left the courtroom after his unsuccessful recusal requests, he participated in a Facebook livestream in the courthouse hallway. His comments were: (1) They "were not going to get a fair hearings in Oklahoma;" (2) "The OMMA wanted cases in Oklahoma County "because all the judges are on their payroll;" (3) The OMMA "think. At least they think, and that one certainly acted like she's biased. If you want to talk about corrupt, Sheila Stinson, corrupt judge in Oklahoma County. Add her to the Priddy list."

¶215 The trial panel found respondent violated ORPC, Rules 3.5(d) (engaged in conduct intended to disrupt a tribunal), 4.4(a) (respect for rights of third persons), 8.2(a) (lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a judge), 8.4(a) (violations of ORPC), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, §1.3 (conduct contrary to prescribed standards).

¶216 We find clear and convincing evidence respondent violated ORPC, Rules 3.5(d) and 4.4(a), when he interfered with the judge's docket call and timely adjudication of rights possessed by third persons. His first motion for recusal was based simply upon the judge's enforcement of a policy reflected in a local District Court rule in effect for several years prior to the hearing. Respondent's first motion for recusal without a legally cognizable argument for a change in policy and law shows an unreasonable litigation strategy. Consideration of this with respondent's conduct during the second in camera hearing and his public comments about judges Stinson and Priddy indicate an improper intent and show violations of ORPC Rules 8.2(a), 8.4(a), 8.4(c), 8.4(d), and RGDP Rule 1, §1.3.

Count XV

¶217 Respondent, with two individuals filming respondent, appeared at the Tulsa District Court Clerk's Office in the criminal department filing area. Respondent approached a clerk and asked that filed documents be redacted. The trial panel found respondent was yelling, threatened to sue everyone, and was cursing at an employee of the clerk's office: "F-- You" and "F-- You, I'm going to sue you."

¶218 Second Deputy for the Tulsa County Clerk's Office arrived at the filing area to address the commotion. Respondent wanted his name and personal information to be redacted from some court documents that had been filed with the court clerk. Day 6, Tr. at 1090. The Deputy Clerk informed respondent that, by statute, court clerks, "on our own," could not make the changes respondent sought to filed documents, and respondent would need to have a judge order the redaction. Respondent was agitated and continued to insult, curse and threaten to sue the Deputy Clerk.

¶219 The deputy clerk testified that as he was walking away respondent followed him continuing with verbal abuse. The clerk asked him to refrain due to a family with young children in the nearby passport area of the office and respondent answered by saying he had a right to choose his language, made a common obscene hand gesture, and "popped off several pretty bad words." Day 6, Tr. at 1092. An employee of the passport office requested respondent to be quiet, and he responded with calling her a "b----" and to "f -- o--." A lawyer who witnessed the tirade described it as "vile despicable, inappropriate, unacceptable behavior for any human, but especially an attorney who is supposed to be held to a higher standard."

¶220 The trial panel found respondent violated ORPC, Rules 8.2(a) (lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a public legal officer), 8.4(a) (violations of ORPC), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, §1.3 (conduct contrary to prescribed standards).

¶221 A Rule 8.4(d) violation, conduct prejudicial to the administration of justice, is based upon interference which is serious and must include some element of "deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct." Respondent sought to have a court clerk alter filed documents when the alteration required a judge's order. Respondent violated ORPC Rules 8.4(c) and 8.4(d). Respondent also violated Rule 8.4(a). We do not find clear and convincing evidence of a Rule 8.2(a) violation. Respondent's obscenities directed to the Deputy Clerk in this context are not a statement concerning the deputy's qualification or integrity. We do find a violation of RGDP Rule 1, §1.3.

¶222 Due to his threatening and improper behavior at the court clerk's office, respondent was charged with a misdemeanor count of disturbing the peace. State v. Durbin, CM-2024-444, District Court of Tulsa County. Respondent entered into a voluntary plea of nolo contendere to disturbance by loud noise, abusive /violent/obsecene/profane/threatening language or threats in violation of 21 O.S. § 136. This plea became the basis for the Disciplinary Rule 7 proceeding against respondent, S.C.B.D. No. 7922, consolidated into the Rule 6 proceeding.

Count XVI

¶223 This grievance lists additional social media livestream attacks upon members of the judiciary by respondent. They include allegations and name-calling, that District Court Judge Priddy is "corrupt," "a felon," "destroyed court records," and that District Court Judge Glassco is a "corrupt motherf------" and that he takes "bribes and kickbacks . . . from all those attorneys." Respondent has provided no evidence to support his allegations against these judges.

¶224 Respondent used his law firm's social media account stating "...the corruption that is Tulsa County, specifically the Glassco group, which is Glassco and the attorneys that essentially use him to run sham legal proceedings . . . and that judge should be in jail and I'm going to everything that I can to help ensure that they find themselves in jail when we do this grand jury petition." Respondent has provided no evidence to support these allegations.

¶225 This Count (XVI) references the allegations made by respondent against a District Court judge and an administrative judge in Counts VI and VII. This Count (XVI) references allegations made by respondent against two judges in Counts IX and XIV. The trial panel found respondent's "social media videos attacking and impugning the reputation of the Tulsa County Judiciary has been viewed "in excess of half a million" times.

¶226 The trial panel found respondent violated ORPC, Rules 4.4(a) (respect for rights of third persons), 8.2(a) (lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a judge), 8.4(a) (violations of ORPC), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, §1.3 (conduct contrary to prescribed standards).

¶227 Respondent's conduct examined in Counts VI, VII, IX, and XIV referenced in Count XVI is not used for the purpose of increased discipline in Count XVI. We also find clear and convincing evidence respondent violated ORPC, Rules 4.4(a), 8.2(a), 8.4(a), 8.4(c), and 8.4(d), and RGDP Rule 1, §1.3.

Count XVII

¶228 The trial panel's title for this grievance is "Respondent's Personal Attacks on Judge Holmes." Judge Holmes asked respondent to be civil to her bailiff in the Tulsa Courthouse, and later respondent stated on one of his livestreams that he had employed a private investigator to follow Holmes and obtain video of her consuming alcohol. Respondent hired the private investigator to determine the judge's alcohol consumption after he had accused her of being a drunk in a courthouse hallway. In a livestream he indicated every decision she made on the bench should be questioned.

¶229 This Count discusses a video respondent posted on social media purporting to show a judge's level of alcohol consumption. An expert stated the video was taken on different dates and employed "jump cuts" to splice together different videos to give an impression of one sequence of events. Respondent's video published the face of the judge's minor grandson, with the license tag number, make and model of the judge's car. Respondent started a webpage, stopsharonholmes.com, and printed flyers with a code to access a webpage with the spliced video. Respondent handed out cards at the courthouse with the access code to the webpage. The card stated the judge "Drives Drunk with a Minor." After respondent's media postings, Judge Holmes' office received "very vile and disturbing calls." Respondent's post-hearing response brief describes his flyers and cards as protected political speech.

¶230 There is no evidence in the record that judge Holmes has ever driven drunk or driven drunk with a minor.

¶231 The trial panel found respondent violated ORPC, Rules 4.4(a) (respect for rights of third persons), 8.2(a) (lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a judge), 8.4(a) (violations of ORPC), and 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, §1.3 (conduct contrary to prescribed standards).

¶232 We find by clear and convincing evidence respondent violated ORPC, Rules 4.4(a), 8.2(a), 8.4(a), and 8.4(d), and RGDP Rule 1, §1.3.

Count XVIII

¶233 The trial panel found that Hirstov hired respondent to represent him in anticipation of criminal charges being filed against Hirstov. He paid with a check in the amount of $7,500, with payee "The Firm on Greenwood." Hirstov testified he hired respondent to represent Hirstov. Day 7, Tr. at 1214. Hirstov owned two businesses in Ottawa County and two businesses in Craig County. These businesses were two marijuana grow operations, one marijuana processing facility, and one dispensary for medical marijuana. His facilities were "raided" and an employee, Bucevac, was arrested with Bucevac's girlfriend. Approximately two weeks after he gave respondent the check, arrest warrants were issued out of two different counties in two criminal proceedings against Hirstov.

¶234 The trial panel found Hirstov repeatedly texted respondent concerning a bondsman and surrendering himself. The trial panel found that respondent told Hirstov: "Go out of state and lay low..." and wait for respondent to contact him.

¶235 Weeks passed, and Hirstov was in Missouri waiting for respondent to find him a bondsman. Hirstov's home in Oklahoma was broken into and all his property stolen. Approximately ten weeks after taking Hirstov's check, he told him that he did not have time to focus on his case and that he had not been able to find him a bondsman. After respondent fired him as a client, Hirstov called a bondsman and was able to get himself one "within ten minutes." Hirstov testified that after being fired as a client he saw respondent had cashed his check and texted respondent saying he believed that was a mistake since you are not representing me. An OBA investigator testified the check was not deposited into respondent's IOLTA account.

¶236 Hirstov filed a grievance against respondent. He requested a refund from respondent and was ignored. He stated respondent did not appear in his cases or seek a bond reduction. Respondent initially met with Hirstov, and during this meeting a co-defendant telephoned from jail and respondent informed the co-defendant he could help him and the co-defendant's girlfriend for a total of $15,000. Hirstov testified that he asked respondent whether such an agreement was proper. Hirstov testified respondent gave him assurances respondent could represent all three, but respondent needed to receive the money before starting to work on their cases filed against the co-defendants. Hirstov testified, "as far as I know," respondent received money for the co-defendants from one of their relatives in Europe who wired it to a relative in Chicago who then wired it to respondent.

¶237 The trial panel found respondent violated ORPC, Rules 1.3 (diligence), 1.4 (communication), 1.5 (fees must be earned), 1.6 (confidentiality), 1.7 (conflict of interest, concurrent clients), 1.15 (failure to deposit retainer fee into client trust account), 1.16(d) (failure to properly provide an accounting and refund of unearned fees), 8.4(a) (violate or attempt to violate the rules of professional conduct), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, §1.3 (conduct contrary to prescribed standards).

¶238 Hirstov testified at the trial panel hearing and that he hired respondent. Respondent did not testify at the trial panel hearing. Respondent's post-hearing response states Hirstov was not his client. Respondent states his advice to Hirstov was logistical advice and not legal advice. He states the money he received was payment for two other individuals and not Hirstov. Respondent states the payment was deposited into the office account because it was earned when paid.

¶239 This Count focuses on whether Hirstov was respondent's client. If Hirstov was respondent's client then respondent clearly violated the ORPC and RGDP as indicated by the trial panel. We have explained an attorney-client relationship and obligations created thereby may be created by a written agreement, an oral agreement, or the conduct of the parties. 

¶240 Hirstov's testimony, the payment by check, and the text messages combine to give clear and convincing evidence that Hirstov hired respondent as his lawyer. We conclude respondent violated ORPC, Rules 1.3, 1.4, 1.5, 1.6, 1.7, 1.15, 1.16(d), 8.4(a), 8.4(d), and RGDP Rule 1, §1.3.

Count XIX

¶241 Brixey and Lantz are officers and majority shareholders of TJB Restricted Holdings, LLC (TJB). TJB formerly operated a medical marijuana compliance testing laboratory. The OMMA issued an Emergency Order of Summary Suspension and TJB ceased operations. Brixey and Lantz hired respondent to represent TJB in an OMMA administrative case and to file a lawsuit against the OMMA. They paid a $15,000 retainer to respondent.

¶242 Respondent requested an administrative hearing and it was set for May 4, 2023. On May 3, 2023, respondent filed a petition for declaratory judgment and injunctive relief, and application for emergency ex parte relief in Delaware County. The defendant was the OMMA, a state agency headquartered in Oklahoma County. On May 3rd in Delaware County, District Court judge Crutchfield denied the application because the OMMA administrative hearing was set for the following day. Respondent then requested judge Crutchfield recuse, and the judge stated he had already ruled. Brixey was present for the hearing and was disappointed with the manner his lawyer addressed the judge.

¶243 Respondent appeared and failed to present any evidence at the administrative hearing the next day. He sought the administrative law judge's recusal (Count XII). The emergency summary suspension against TJB was sustained. On May 15th respondent filed a supplemental application for emergency ex parte relief in the Delaware County case before District Court judge McAffrey. The trial panel found that respondent misrepresented to Judge McAffrey that he had provided notice of the May15th hearing to a lawyer representing the OMMA, John Wiggins. The judge granted an ex parte temporary restraining order against OMMA and set a show cause hearing for May 25, 2023.

¶244 Wiggins filed on May 25th a special entry of appearance, with a motion to rescind, and a motion to transfer due to venue, with an assessment of attorney's fees and costs. Wiggins argued respondent was intentionally filing improper ex parte injunctions around the state to inconvenience the State. Wiggins noted respondent appeared as counsel in a matter originally filed in Okmulgee County against the OMMA and it had been transferred to Oklahoma County due to venue.

¶245 Judge McAffrey issued an order transferring the case to Oklahoma County, with respondent's client to pay the cost of the transfer. The judge also ordered that the OMMA's application for attorney fees shall be set by application. The judge retained the issue of attorney fees.

¶246 Brixey and Lantz testified that respondent never told them the proper venue was in Oklahoma County. McAffrey granted the OMMA's motion to assess attorney fees and costs "against plaintiff and its counsel, Mr. Ronald Durbin." The court ordered that attorney fees and costs would be determined at a later date. Judge McAffrey awarded attorney fees in the amount of $30,360.00 plus costs in the amount of $1,374.67 to the OMMA.

¶247 Approximately five weeks after the order, Wiggins sent an email with a copy of the order attached and stated that the time to commence an appeal had expired and Wiggins' client had given instructions to collect. Respondent replied that the email was patently false, no order had been entered holding him personally liable, "You clearly misread the order .. . Sorry for your confusion. Perhaps it is time to retire? You really should teach yourself . . . how to practice law competently before you send emails like this. It really makes you look like an idiot."

¶248 On February 7, 2024, after learning about the assessment of attorney fees and costs against them, Brixey and Lantz fired respondent and requested an accounting and refund of unearned fees. They requested the return of all client files relating to TJB business. The request came when respondent was representing TJB in three matters, the OMMA administrative case, the TJB v. OMMA case, and a civil action against Brixey and Lantz (Brixey case) filed by minority shareholders. Respondent had filed an entry of appearance and Answer in the Brixey case, plaintiffs in the case had filed a motion to compel alleging defendants' failure to respond to discovery for more than two months. Respondent informed Lantz and Brixey he would not charge an attorney's fee for the Brixey case.

¶249 The trial panel found respondent failed to withdraw from his clients' three cases, failed to return their files, and failed to provide an accounting. Respondent informed them that they owed him fees, but did not provide a billing statement. When questioned concerning the $31,734.67 in attorney fees and costs, respondent initially told them to file a claim with his insurer, he changed his mind after Brixey filed a grievance against him with the OBA.

¶250 Brixey filed a grievance claiming incompetent and negligent representation of Brixey and Lantz, a failure to communicate and respondent's mishandling of the TJB v. OMMA case resulting in the order awarding attorney fees and costs. The record states Lantz was able to record part of a livestreaming event posted by respondent wherein respondent claimed to be into, and presently on, psilocybin (mushrooms) before respondent removed the posting.

¶251 In the Delaware County case where attorney fees and costs were awarded, respondent filed a motion for new trial, individually, and claimed to have asked Judge McAffrey to recuse. The trial panel concluded this allegation was a false claim. The motion stated it was based upon statements by the judge respondent thought were inappropriate and indicative of a bias. Respondent failed to appear on his motion for new trial, but John Wiggins appeared and filed an application for indirect contempt for willful violation of the court's lawful order commanding respondent to pay defendant $31,734.67.

¶252 Prior to the scheduled hearing on the contempt, respondent filed a petition in error with the Supreme Court stating the Delaware District Court acted while a recusal was pending. Further, respondent failed to advise the Supreme Court that he had specifically withdrawn his request for McAffrey's recusal on the record. The contempt citation hearing is to be reset following respondent's appeal. Wiggins was asked for his opinion by the trial panel. He stated in fifty years of practice he had never seen another attorney behave like respondent: pattern of abusing fellow lawyers, clients of fellow lawyers, misusing the privilege of the subpoena power, issuing subpoenas as a bully just because he can, intentionally using his license to make it difficult for opposing parties and opposing counsel.

¶253 The trial panel found respondent violated ORPC, Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.15 (safekeeping property), 1.16(d) (terminating representation), 3.1 (meritorious claims), 3.2 (expediting litigation), 3.3 (candor toward the tribunal), 4.4(a) (respect for the rights of third parties), 5.5 (Unauthorized practice of law), 8.2 (lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualification or integrity of a judge), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rules 1, §1.3 (conduct contrary to prescribed standards), 9.1 (procedure following disciplinary action).

¶254 The trial panel indicated that respondent was, or should have been, aware that venue was proper in Oklahoma County. The trial panel relied upon a transfer to Oklahoma County involving respondent that previously occurred in Dr. Z. Leaf Cultivation, LLC v. OMMA, CV-2021-00047, where part of the order stated "12 O.S. §133

¶255 Respondent argues that both Brixey and Lantz are businessmen and knew what was happening with their cases and they understood the venue issue in their cases.

¶256 We find the evidence is clear and convincing respondent violated ORPC, Rules 1.1, 1.3, 1.4, 1.15, 1.16(d), 3.1, 3.2, 3.3, 4.4(a), 8.2, 8.4(c), 8.4(d), and RGDP Rule 1, §1.3. Due to an insufficient record, we do not find to be established by clear and convincing evidence the two violations tied to respondent's behavior after his interim suspension, ORPC Rule 5.5, and RGDP Rule 9.1.

Count XX

¶257 Respondent and group of approximately five adult males recorded their visit to the Oklahoma County Courthouse. They first went the Court Clerk's Criminal Department to conduct an audit of felony charges recently filed. A court clerk provided them with their requested documents. They then went to the District Attorney's Office and continued to record. After being buzzed into the office, the group recorded the inner workspace, employees' space, and the receptionist's desk area despite being asked to stop filming. A D.A. investigator went to the front area and advised them they were in a secure area and could not film. The investigator asked them to leave, but they declined to do so until they were escorted out of the D.A.'s offices by building security,

¶258 The D.A. filed a grievance explaining as a result of the visit there is a lockdown for elevators leading to the seventh floor, and every police officer, defense attorney, and delivery person must now telephone the D.A.'s Office and obtain an escort from a staff member. She stated respondent and his supporters had visited other government officers in an attempt to intimidate employees and get a reaction to post on social media.

¶259 Respondent created a disturbance at the Texas County District Attorney's Office when he demanded immediate access to District Attorney Office's bank records pursuant to the Open Records Act. The trial panel found that when an office manager tried to assist respondent, respondent attempted to place the employee under "citizen's arrest" for allegedly violating the Open Records Act. Respondent identified himself as an attorney.

¶260 On April 11, 2024, respondent was at the Pottawatomie County Courthouse and demanded to view a court file that had been sealed. He did not receive the file and he argued and harassed the court clerk's staff. He demanded a list of all names, salaries, and employment records of the staff. He threatened them with a federal lawsuit. He refused to leave and law enforcement was called. He left the courthouse and created a disturbance at the D.A.'s office for Pottawatomie County. He demanded to see a list of all employees and their salaries.

¶261 On April 19, 2024, respondent went to the Muskogee County Courthouse where he requested at least twenty (20) use-of-force reports. An Undersheriff instructed respondent to put his request in writing. Respondent refused to put his request in writing and attempted to place the Undersheriff under a citizens' arrest. Respondent livestreamed the encounter. Respondent never followed through with a written Open Records Act request for the documents. He went to the United States Courthouse in Muskogee as he livestreamed the event, and he stated he had no business there, "so I figure we'll go over there and show you guys a tour of the federal courthouse." He was not permitted beyond a security checkpoint with his cellular phone and recording devices.

¶262 Respondent made disparaging and vulgar remarks to the security personnel, including that he did not recognize their authority. He identified himself as a lawyer with his "bar card" and stated he was admitted to the United States District Court for Eastern District of Oklahoma and to the Bankruptcy Court. On April 19, 2024, respondent was automatically disbarred from the United States District Court for Eastern District of Oklahoma due to his interim suspension from the OBA. Respondent left the federal courthouse and went to a Muskogee municipal building. He stood by the receptionist's desk and when she attempted to answer telephone calls respondent said "sh--," "f--," "c--sucker," in a very loud voice "to prove . . . that it's a First Amendment constitutionally protected activity."

¶263 Respondent went to Drumright, Oklahoma, Police Dispatch Center, to request records. When he was approached by a police officer, respondent became verbally abusive and made derogatory comments about the officer. When the officer returned to the secure area respondent stood outside the locked door and yelled loudly "f--" repeatedly.

¶264 Respondent livestreamed his "audit" in Lawton. He, with his group, went to the Comanche County Court Clerk's Office and requested a review of a particular file. While there he became abusive, especially towards the clerk. When Comanche County Sheriff's Deputies responded to the Court Clerk's Office, respondent was escorted out of the building while making threats of federal litigation to the Deputies. Respondent then went to Lawton City Hall. The next day he returned to the Comanche County Courthouse where he livestreamed another "audit" and was belligerent and abusive to the Sheriff and deputies. Again, he threatened them with federal litigation. He opined to the Sheriff and those assembled that somebody cannot disturb the peace with words like "idiot," "as-----," "f--," s----," and "c----." When told he was going to be escorted out of the building, respondent stated he wanted to make an Open Records Act request to the District Attorney. Respondent accused the Sheriff of breaking the law when the Sheriff told respondent he would have to submit respondent's record request to the D.A. Respondent then asked if he could place the Sheriff under citizen's arrest and take him before a judge.

¶265 Respondent and his group returned to Lawton City Hall where they continued to livestream and be verbally abusive and shout profanities at a security officer. Respondent had a confrontation with the Deputy City Manager and the security officer and the officer warned respondent to not make a disturbance as he had the day before. Respondent then began repeating in a loud voice "f----." When respondent was told to leave the building because he was creating a disturbance, respondent denied doing so and refused to leave. Respondent livestreamed that people were coming "to beat us with baseball bats" and "poison our food." The City's Facebook page was flooded with abusive and threatening comments, some of which published addresses for the security guard and other City employees.

¶266 Respondent conducted an "audit" at the Wagoner County Courthouse. Respondent went to the office of the Chief Judge of the District Court, Judge Kirkley, where he was told he could not record. He informed the judge the recording was turned off, but turned the camera away and continued to record. Respondent went to the inner chambers of Judge Kirkley and began to openly record video. The judge told him he could not record. Respondent refused to stop recording and argued that there were no posted signs restricting the public from having access to Judge Kirkley's office. When the judge asked law enforcement officers to escort respondent out of the building, respondent countered with he was "going to look into" the judge, and if he ran for re-election it would not go well for the judge. Respondent then intimated he would file a judicial complaint.

¶267 The trial panel found that during this time at the Wagoner County Courthouse, respondent wasted time and resources of the court employees, and law enforcement. Further, respondent disrupted and disturbed government employees as they performed their job duties. Additionally, respondent made multiple false statements to Judge Kirkley that he had not recorded inside the judge's chambers.

¶268 Respondent posted, and continue to post his Wagoner County "audit" on his YouTube channel. The video included Judge Kirkley's telephone numbers and instructed viewers: "Don't waste any of the Judge's employees because they didn't do anything wrong -- the judge did." Judge Kirkley testified that after the video was posted "people called my office every five minutes and cuss-out my secretary-bailiff to the point I had to tell them not to answer the phone." The phone "filled upon with voicemails with threats" and other statements, "so we had to disable the voicemail."

¶269 The trial panel found that respondent continues to engage in abusive and intimidating behavior towards employees who decline or are unable to immediately provide him with records upon demand, or who object to respondent's loud, disruptive, and often profane behavior.

¶270 The trial panel found respondent's conduct was intended to disrupt, harass, and intimidate government employees and an attempt by him to instigate claims for which he can file or threaten to file lawsuits. The trial panel found respondent's conduct was also intended to garner content for, and views of, his YouTube channel in an attempt to gain monetary compensation. Respondent held himself out as an attorney on his YouTube channel after he received an interim suspension from the OBA.

¶271 The trial panel found respondent violated ORPC, Rules 3.3 (candor toward the tribunal), 4.4(a) (respect for the rights of third parties), 5.5 (b)(2) (a lawyer who is not admitted to practice shall not out to the public or represent that they are admitted to practice law), 8.4(a) (violate or attempt to violate the rules of professional conduct) 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and RGDP Rule 1, §1.3.

¶272 We find clear and convincing evidence respondent violated ORPC, Rules 4.4(a), 5.5 (b)(2), 8.4(a), 8.4(c), 8.4(d), and RGDP Rule 1, §1.3. Because Rule 3.3 involves a lawyer's role as an advocate for a client and making statements to a tribunal, State ex rel. Oklahoma Bar Association v. Dobbs, supra, we do not find clear and convincing evidence of a Rule 3.3 violation.

Part V. Respondent's Brief and the OBA's Motion to Strike

¶273 The OBA filed a motion to strike respondent's post-hearing response brief filed in this Court. The OBA's motion is based upon: (1) Respondent's sixty-page brief exceeds the fifty-page limit previously set by a special Order of this Court; (2) Respondent's brief has attached eleven exhibits containing seventy-seven pages of text; (3) Respondent filed six unbound copies of his brief; and (4) Respondent's exhibits "interject untested evidence into a closed record."

¶274 We have carefully examined respondent's post-hearing response brief. We see nothing in respondent's response brief which would lead us to a different conclusion on any violation or on the disciplinary sanction to be imposed. Respondent may not use his response brief to create additional facts for the record. However, the response brief has statements of law that are erroneous and show respondent's view of the law and its application to his conduct. Denying the motion to strike leaves those views as a contrast to the law discussed in the Court's opinion, and could be instructive for additional proceedings related to respondent, if any. The motion to strike is denied.

Part VI. Summary of Misconduct

¶275 In summary: We have found and concluded respondent violated the following standards of professional conduct.

COUNT I: RGDP, Rule 5, §5.4;

COUNT II: ORPC, Rules 1.1, 1.3, 1.4, 1.16, and 8.4(a);

COUNT III, ORPC, Rules 8.4 (a), & 8.4(c), 8.4(d), and RGDP, Rule 1, §1.3;

COUNT IV, ORPC, Rules 8.2(a), 8.4(a), 8.4(c), 8.4(d), and RGDP, Rules 1, §1.3,

and 5, §5.2;

COUNT V, ORPC, Rules 3.4(a), (d), 4.4 (a), 8.4(a), and RGDP, Rules 1, §1.3, and 5, §5.2;

COUNT VI: ORPC, Rules 1.3, 3.1, 3.2, 3.3, 3.5, 8.2(a), 8.4(a), and 8.4(d),

and RGDP Rules 1, §1.3, and 5, §5.2;

COUNT VII: ORPC, Rules 4.4(a), 8.4(a), 8.4(d), and RGDP, Rules 1, §1.3 and and 5, §5.2;

COUNT VIII: ORPC, Rules 4.4(a), 8.4(a), and RGDP, Rules 1, §1.3 and 5, §5.2;

COUNT IX: ORPC, Rules 3.3(a)(1), 3.3(d), 4.4(a), 8.2(a), 8.4(a), 8.4(c), and 8.4(d),

and RGDP Rules 1, §1.3, and 5, §5.2;
COUNT X: ORPC, Rules 3.3(a)(1), 3.3(d), 4.4(a), 8.2(a), 8.4(a), and RGDP Rules 1, §1.3, and 5, §5.2;

COUNT XI: None.

COUNT XII: ORPC, Rules 3.1, 3.5, 4.4(a), 8.2(a), 8.4(a), 8.4(d), and RGDP,

Rule 1, §1.3;

COUNT XIII: None;

COUNT XIV: ORPC, Rules 3.5(d), 4.4(a), 8.2(a), 8.4(a), 8.4(c), 8.4(d), and

RGDP Rule 1, §1.3;

COUNT XV: ORPC, Rules 8.4(a), 8.4(c), and 8.4(d); and RGDP Rule 1, §1.3;

COUNT XVI: ORPC, Rules 4.4(a), 8.2(a), 8.4(a), 8.4(c), and 8.4(d), and RGDP

Rule 1, §1.3;

COUNT XVII: ORPC, Rules 4.4(a), 8.2(a), 8.4(a), and 8.4(d), and RGDP

Rule 1, §1.3;

COUNT XVIII: ORPC, Rules 1.3, 1.4, 1.5, 1.6, 1.7, 1.15, 1.16(d), 8.4(a), 8.4(d),

and RGDP Rule 1, §1.3;

COUNT XIX: ORPC, Rules 1.1, 1.3, 1.4, 1.15, 1.16(d), 3.1, 3.2, 3.3, 4.4(a),

8.2, 8.4(c), 8.4(d), and RGDP Rules 1, §1.3;

COUNT XX: ORPC, Rules 4.4(a), 5.5 (b)(2), 8.4(a), 8.4(c), 8.4(d), and

RGDP Rules 1, §1.3.

Part VII. Discipline

¶276 The trial panel recommended respondent be disbarred. Our review is de novo and findings of fact, conclusions of law, and recommendations of discipline made by a trial panel of the Professional Responsibility Tribunal are neither binding nor persuasive for this Court's review. 

¶277 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct, but discipline must be decided on a case-by-case basis. 

¶278 Imposing discipline is not based merely upon the number of violations and their variety. Some violations are considered to be of greater or lesser importance for a comparison when imposing discipline because the public's interest in proscribing the behavior is heightened or lessened. For example, some actions may pose a serious potential for interference with the administration of justice, but not warrant disbarment. 

¶279 An important element we have explained when imposing discipline is when particular circumstances require a quantum of discipline "to preserve public confidence in the Bar" because the discipline is publicly viewed as something to "safeguard the interest of the public, the courts, and the legal profession." 

¶280 Respondent's view is that he was singled-out due to his zealous advocacy that happens to contain primarily political opinions and merely a few obscenities. Some did object to the content of his speech, and his more recent conduct using obscenities in public invoked their dismay. More than one witness testified that respondent's outbursts made them wonder if they were seeing a loss of self-control requiring the presence of security or law enforcement personnel as a prudent action.

¶281 Respondent's disciplinary case is almost in a class by itself for the purpose of comparing different discipline cases for the degree of discipline. This is due to (1) the number and nature of respondent's violations, (2) the need for protecting the public, the OBA's members, and the judiciary from respondent's misrepresentations, lies, and recklessly untrue allegations as a lawyer, and (3) protecting members of the public from unprofessional legal representation. We disbar respondent from the date of his interim suspension. 

Part VIII. Rule 7 Proceeding, MCLE, and OBA Dues

¶282 While the Rule 6 proceeding was pending, the OBA initiated a Rule 7, RGDP, summary disciplinary proceeding based upon respondent's judgment and sentence and nolo contendere plea to violating 21 O.S. §136. This event is described in Count XV of the Rule 6 proceeding, where we found and concluded respondent's conduct violated ORPC Rules 8.4(a), 8.4(c), and 8.4(d); and RGDP Rule 1, §1.3. Because we disbar respondent we need not address whether his conviction also demonstrates unfitness to practice law, an analysis that would normally be addressed in a Rule 7 proceeding. 

¶283 While the Rule 6 proceeding was pending, respondent's membership in the Oklahoma Bar Association was suspended and he was prohibited from the practice of law in the State of Oklahoma by Order of the Court on June 2, 2025, and reported at 2025 OK 39

¶284 While the Rule 6 proceeding was pending, respondent's name was stricken from the Oklahoma Bar Association's membership rolls and the Roll of Attorneys by Order of the Court on June 2, 2025, and reported at 2025 OK 40

Part IX. Costs

¶285 The OBA filed an application to assess costs in the amount of $22,152.14. The costs of the investigation, record and disciplinary proceedings shall be surcharged against the disciplined lawyer, unless remitted for good cause by this Court. 5 O.S. Ann. (West 2023) Ch. 1, App. 1--A, Rule 6, §6.16 (RGDP). The OBA's motion for costs in the amount of $22,152.14 is granted.

¶286 The awarded costs in the amount of $22,152.14 shall be paid within ninety (90) from the date this opinion becomes final. RGDP, Rule 6, § 6.16. The date this opinion becomes final is twenty days after the date this opinion is filed and mailed to the parties if no petition for rehearing is filed, 

Part X. Application to Lift Suspension.

¶287 Respondent filed on September 19, 2025, an "application for emergency relief lifting emergency interim suspension without hearing and request for hearing." Respondent asserts he did not receive a "full evidentiary hearing before this Court or the Professional Responsibility Tribunal" when he received his interim suspension. Respondent was provided an opportunity to respond to the OBA's application for an interim suspension. He did so with legal argument and attached exhibits, and he did not request an evidentiary hearing. He filed a supplemental response after the OBA verified its application, and he argued "Respondent is entitled to a hearing to determine what if any rules he violated."

¶288 An order of interim suspension is based upon a showing "where such conduct poses an immediate threat of substantial and irreparable public harm." 5 O.S. Ann. (West 2023, Supp. 2025) Ch. 1, App. 1--A, Rule 6, §6.2A. When a fact necessary to support an order of interim suspension is controverted and put in issue, or verified facts are insufficient to support an interim suspension, then the Court "may refer the matter to the Professional Responsibility Tribunal for hearing and recommendation." 

¶289 Respondent states "[p]ursuant to Rule 6.2(A)(3), RGDP, a respondent may file an application to vacate of modify an order of interim suspension upon a showing that the grounds for suspension have been removed or remedied." While the language used by respondent does not appear in Rule 6, §6.2A(3), the Court has authority in an attorney disciplinary matter before the Court to modify its orders when appropriate. 

Part XI. Conclusion

¶290 Respondent, RONALD EDWARD DURBIN II, is hereby disbarred effective from the date of his interim suspension, April 8, 2024. His name shall be, and remain, stricken from the Roll of Attorneys. Costs are assessed against respondent in the amount of $22,152.14.

¶291 ROWE, C.J.; KUEHN, V.C.J.; WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY, and KANE, JJ., CONCUR.

¶292 JETT, J., CONCUR IN RESULT.

FOOTNOTES

See also herein infra at Part X. Application to Lift Suspension.

A lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the Oklahoma Bar Association, and thereby relinquish the right to practice law, only by delivering to the Commission an affidavit stating that the lawyer desires to resign and that:

(a) The resignation is freely and voluntarily rendered, the lawyer is not being subjected to coercion or duress, and the lawyer is fully aware of the consequences of submitting the resignation;

(b) The lawyer is aware that there is presently pending an investigation into, or proceedings involving, allegations that there exist grounds for discipline, specifying particularly the misconduct alleged;

(c) The lawyer agrees that he may be reinstated only upon full compliance with the conditions and procedures prescribed by these Rules, and no application for reinstatement may be filed prior to the lapse of five years from the effective date of the resignation.

Id. at ¶5.

Id. at ¶¶3, 12.

Id.

State ex rel. OBA v. Gasaway, 1993 OK 133863 P.2d 1189State ex rel. OBA v. Perkins, 1988 OK 65757 P.2d 825cf. State ex rel. OBA v. Knight, 205 OK 59, ¶21, 359 P.3d 1122

State ex rel. OBA v. Minter, 2001 OK 6937 P.3d 763Tweedy v. State ex rel. OBA, 1981 OK 12624 P.2d 1049

In re Real Property of Integris Realty Corp., 2002 OK 8558 P.3d 200State ex rel. OBA v. Mothershed, 2011 OK 84264 P.3d 1197

(b) Disqualification Upon Request: Whenever any lawyer subject to an investigation on disciplinary grounds, or counsel for such a lawyer, shall seek disqualification of the General Counsel, in any matter, the lawyer seeking such disqualification shall submit, in writing, the basis for the request. If the General Counsel thereafter continues to refuse to disqualify himself voluntarily, then the Commission shall determine whether or not the disqualification will be required. If the Commission requires the disqualification of the General Counsel, the procedure described in Rule 3.3(b) shall be followed.

(c) If during the prosecution of a formal complaint, a motion to disqualify the General Counsel is filed, the Professional Responsibility Tribunal shall hear the matter. Disqualification shall be ordered only if sufficient evidence is presented that the General Counsel should be disqualified.

See, e.g., Walker v. State Bar, 49 Cal.3d 1107, 264 Cal.Rptr. 825, 783 P.2d 184, 188 (1989) (en banc) ("Fundamental fairness sufficient to meet the demands of due process has never been held to encompass the right to assistance of counsel in State Bar disciplinary proceedings, under either the United States Constitution or the California Constitution.").

See, e.g., Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532Lassiter v. Department of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (discussing loss of parental rights that are not mere property rights, and noting Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), and elements to be evaluated for a due process claim).

See, e.g., State ex rel. Bd. of Regents of the Univ. of Okla. v. Lucas, 2013 OK 14297 P.3d 378quoting Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

See State ex rel. OBA v. Mothershed, at note 19, supra; and State ex rel. OBA v. O'Neal, 1993 OK 61852 P.2d 713infra.

State ex rel. OBA v. Bailey, 2023 OK 34530 P.3d 24

(b) A party in any proceeding before the PRT may request the disqualification of a

Trial Panel member upon sufficient cause shown. A request under this subsection shall be made by written motion marked "confidential," but shall not be filed in the proceeding. The motion must include a statement of the grounds, with any supporting authority, for disqualification and a certificate that the motion is not presented for an improper purpose, such as delay. The motion shall be served on the parties and the Trial Panel members. A motion raising fact issues shall be verified by a person having personal knowledge of the facts. A request under this subsection must be made not less than twenty (20) days before the proceeding is scheduled for hearing. A request under this subsection is to be considered and decided by the Trial Panel member to whom the motion is addressed. The Trial Panel member shall have five (5) days from receipt of the motion to decide whether to disqualify from the proceeding. If for any reason a decision is not made within that time, then the request shall be deemed denied.

Id. at PR 1, Disqualification, part (c):

(c) If, upon request made under subsection (b), the Trial Panel member declines to

disqualify, then the party requesting disqualification may re-urge the same motion to the Chief Master for consideration. Movant shall attach the original motion to a separate motion marked "confidential," but not file it. The new motion, which shall be submitted to the Chief Master and served on the parties and Trial Panel members within five (5) days from the date of the denial to disqualify, shall state that the Trial Panel member denied the initial request to disqualify and that the request for disqualification is being presented to the Chief Master for consideration. The Chief Master shall have seven (7) days from the date of receipt to rule on the motion. If the Chief Master grants the motion, then an order of substitution will be entered and the matter of disqualification shall be deemed concluded. If the motion is denied, then the request for disqualification may be made to the Supreme Court by written motion in the same proceeding. A motion to the Supreme Court shall be filed as soon as practicable in the Office of the Chief Justice and marked "confidential." The Presiding Master may postpone the hearing in the proceeding as needed until the Court has ruled on the disqualification motion.

Id.

See, e.g., Clark v. Bd. of Educ. of Ind. Sch. Dist. No. 89, 2001 OK 5632 P.3d 851in camera request to the trial judge, then a formal request to the same judge, then the motion may be re-presented to the chief judge, and then mandamus may be sought in the Supreme Court).

See, e.g., Clark v. Bd. of Educ. of Ind. Sch. Dist. No. 89, supra note 37, at ¶10 & n.16 (A party's motion for recusal is treated as a motion to disqualify based upon the substance of the party's motion); Respondent's undated letter to the trial panel delivered Nov. 4, 2024 (using recuse/recusal); Respondent's March 5th motion to disqualify (disqualify and recuse).

See PR 1(b) at note 31 supra.

supra at note 24.

State ex rel. OBA v. Collins, 2024 OK 69558 P.3d 26State ex rel. OBA v. Watkins, 2019 OK 76461 P.3d 174

State ex rel. OBA v. Mothershed, note 19 supra, at 2011 OK 84State ex rel. OBA v. Knight, 2015 OK 59

Mothershed, note 19 supra, at 2011 OK 84

12 O.S.2021, §2004.1

12 O.S.2021, §2004.1

In re Initiative Petition No. 397, 2014 OK 23326 P.3d 496Colton v. Huntleigh USA Corp., 2005 OK 46121 P.3d 1070

Mothershed, note 19 supra, at 2011 OK 84

State ex rel. OBA v. Lobaugh, 1988 OK 144781 P.2d 806

Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820-22, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (while most disqualification matters are not sufficient for imposing a due process constitutional requirement, due process is violated when the judge has a "direct, personal, substantial, pecuniary interest" in the adjudication of the case before the judge).

Rippo v. Baker, 580 U.S. 285, 287, 137 S.Ct. 905, 197 L.Ed.2d 167 (2017).

Williams v. Pennsylvania, 579 U.S. 1, 8, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016).

Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997) (citing Green v. Dorrell, 969 F.2d 915, 919 (10th Cir.1992)).

Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

State ex rel. OBA v. Mothershed, supra note 19 at 2011 OK 84State ex rel. OBA v. Stow, 1998 OK 105975 P.2d 869see also Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc., 1997 OK 78941 P.2d 995In re Guardianship of Berry, 2014 OK 56335 P.3d 779

State ex rel. OBA v. Mothershed, supra at note 19, at 2011 OK 84

Mothershed, 2011 OK 84

State ex rel. OBA v. Brewer, 1989 OK 172794 P.2d 397

State ex rel. OBA v. Bailey, supra note 29.

In re Manville, 494 A.2d 1289, 1298 (D.C.1985); Florida Bd. of Bar Exmnr's v.G.W.L., 364 So.2d 454, 458 (Fla.1978).

In re Credit Default Swaps Auctions Litig., 710 F. Supp. 3d 895, 943 (D.N.M. 2023) (discussing Sherman Act, 15 U.S.C. §1, Clayton Act 15 U.S.C. §15, restraint of trade claims, horizontal or vertical price fixing, tying arrangements, horizontal market divisions, reciprocal dealing arrangements and horizontal group boycotts as impermissible restraints, and also when circumstances of a case may show a restrictive practice that should be prohibited as imposing an unreasonable restraint on competition).

See, e.g., Jordan River Estates, LLC v. Favre, 278 So.3d 1135, 1152 (¶67) (Miss.2019) (discussing restraint of trade claims, claims for tortious interference and civil conspiracy) (citing N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886, 914, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982), where the "Supreme Court overturned Mississippi Supreme Court's award of damages resulting from boycott activity when 'major purpose of the [campaign] in this case was to influence governmental action'"); City of Keene v. Cleaveland, 167 N.H. 731, 118 A.3d 253, 260 (2015) (citing Claiborne, supra, and also citing Snyder v. Phelps, 562 U.S. 443, 451-454, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011), noting state tort liability for engaging in protected activity may undermine "the free and robust debate of public issues," and "pose the risk of a reaction of self-censorship on matters of public import").

Watts v. U.S., 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964)).

Accord, State ex rel. OBA v. Bednar, 2013 OK 22299 P.3d 488

State ex rel. OBA v. Watkins, supra at note 44.

State ex rel. OBA v. Bailey, 2023 OK 34

State ex rel. OBA v. Bolusky, 2001 OK 2623 P.3d 268

See, e.g., Berkson v. State ex rel. Askins, 2023 OK 70532 P.3d 36

State ex rel. OBA v. Shields, 2025 OK 20567 P.3d 361State ex rel. OBA v. Besly, 2006 OK 18136 P.3d 590

Hill v. Colorado, 530 U.S. 703, 719-26, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (a time, place, and manner restriction is constitutional when it is content neutral and narrowly tailored to serve governmental interests that are significant and legitimate) (applying Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).

State ex rel. OBA v. George, 2022 OK 34508 P.3d 975State ex rel. OBA v. Porter, 1988 OK 114766 P.2d 958

In re Disciplinary Action Against Nickitas, 984 N.W.2d 232, 238-39 (Minn.2023).

Id. 984 N.W.2d at 239.

State ex rel OBA v. Wilcox, 2009 OK 81227 P.3d 642see State ex rel. OBA v. Wagner, 2022 OK 13503 P.3d 1201

See State ex rel. OBA v. Porter, discussed herein at ¶¶103-104.

Sefick v. Gardner, 164 F.3d 370, 372 (7th Cir.1998) cert. den., 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 794 (1999) ("The lobby of the courthouse is not a traditional public forum or a designated public forum, not a place open to the public for the presentation of views. No one can hold a political rally in the lobby of a federal courthouse. It is a 'nonpublic forum,' which government 'may reserve...for its intended purposes'.").

City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); cf. Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 186, 143 S.Ct. 1444, 216 L.Ed.2d 183 (2023) (discussing when the remedy of 42 U.S.C. § 1983 may be used to enforce federal statutes).

20 O.S.2021, §1658

F. 1. All proceedings under this section shall be held in secrecy to the same extent as proceedings before a grand jury.

2. A complainant or a witness appearing before the Council who reveals or causes to be revealed to the public any information about a proposed or pending judicial complaint shall be subject to a fine not to exceed One Thousand Dollars ($1,000.00). The Council on Judicial Complaints shall promulgate rules pursuant to the Administrative Procedures Act governing proceedings under this subsection.

3. In addition to the fine provided for in paragraph 2 of this subsection, any judicial officer who reveals or causes to be revealed any information about a proposed or pending judicial complaint shall be subject to public reprimand by the Court on the Judiciary.

State ex rel. OBA v. Boyd, 2025 OK 30571 P.3d 105

See, e.g., Boyle v. ASAP Energy, Inc., 2017 OK 82408 P.3d 183factum probans (the fact which is stated), must be presented to the finder of fact to prove the factum probandum (the factual proposition to be proved) required as part of the party's cause of action.); State v. DiRienzo, 53 N.J. 360, 251 A.2d 99, 106 (1969) (evidence is a relation between two facts, the factum probandum, or proposition to be established, and the factum probans, or material evidencing the proposition; all evidence must involve an inference from some fact to the proposition to be proved) (citing Wigmore on Evidence (3d ed), and State v. Mucci, 25 N.J. 423, 136 A.2d 762, 765 (1957)).

Nelson v. Enid Medical Associates, 2016 OK 69376 P.3d 212Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), focuses on the methodology used to create an expert's opinion that is based upon a factual premise, or "what is known," for the purpose of the methodology used in the opinion.).

State ex rel. OBA v. Hine, 1997 OK 52937 P.2d 996citing State ex rel. OBA v. Miskovsky, 1991 OK 88824 P.2d 1090quoting In the Matter of C.G., 1981 OK 131637 P.2d 66

See, e.g., Darlingh v. Maddaleni, 142 F.4th 558, 564-67 (7th Cir. 2025) (discussing expletive-laden political speech by a public employee and balancing interests required by Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)) Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 969 (10th Cir. 1996), (protections afforded by the First Amendment have never been limited to newspapers and books) (citing Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (person wearing a jacket bearing an expletive and expressing a negative opinion of a mandatory draft for military service)).

Fed. Commc'n Comm'n v. Fox Television Stations, Inc., 567 U.S. 239, 258, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012) (Commission failed to give Fox or ABC fair notice prior to the broadcasts in question that fleeting expletives and momentary nudity could be found actionably indecent....the Commission's standards as applied to these broadcasts were vague, and the Commission's orders must be set aside.").

51 O.S.2021, §24

Gaylord Entertainment Co. v. Thompson, 1998 OK 30958 P.2d 128

Id. 1998 OK 30958 P.2d 128

Bd. of Prof'l Responsibility v. Davidson, 2009 WY 48, ¶¶14-17, 205 P.3d 1008citing In re Disciplinary Action Against Graham, 453 N.W.2d 313, 321--322 (Minn.1990), ("Where an attorney criticizes the bench and bar, the issue is not simply whether the criticized individual has been harmed, but rather whether the criticism impugning the integrity of judge or legal officer adversely affects the administration of justice and adversely reflects on the accuser's capacity for sound judgment."), and In re Terry, 271 Ind. 499, 502, 394 N.E.2d 94, 95 (1979), cert. denied sub nom. Terry v. Indiana Supreme Ct. Disciplinary Comm'n, 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980) (The societal interests protected by [defamation and professional disciplinary] law are not identical. Defamation is a wrong directed against an individual and the remedy is a personal redress of this wrong. On the other hand, the Code of Professional Responsibility encompasses a much broader spectrum of protection.")).

See, Count XII, infra, discussing Att'y Grievance Comm'n v. Frost, 437 Md. 245, 85 A.3d 264 (2014), and actual malice test analysis from New York Times, Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

Hutchinson v. Proxmire, 443 U.S. 111, 119 n. 8, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979).

See, e.g., Geraci v. Probst, 15 N.Y.3d 336, 912 N.Y.S.2d 484, 938 N.E.2d 917, 923 (2010) (a damage per se instruction was allowed when municipal employee was accused of a misdemeanor in the performance of the employee's duties because the accusation was "considered an allegation that would damage plaintiff's professional reputation"). Compare Oklahoma Publ'g Co. v. Kendall, 1923 OK 999221 P. 762cf. Gaylord Entertainment Co. v. Thompson, 1998 OK 30958 P.2d 128

Fiacco v. Sigma Alpha Epsilon Fraternity, 528 F.3d 94, 99 (1st Cir.2008).

Rosenblatt v. Baer, 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) (quoting New York Times, Co. v. Sullivan, 376 U.S. 254, 283 n.23, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

Rosenblatt v. Baer, 383 U.S. at 86.

12 O.S.2021, §§ 1430

The Supreme Court of Oklahoma possesses constitutional and inherent authority, and original, exclusive, and nondelegable jurisdiction, to control and regulate the practice of law, licensing, ethics, and discipline of attorneys in this jurisdiction. State ex rel. OBA v. Shields, 2025 OK 20567 P.3d 361R.J. Edwards v. Hert, 1972 OK 151504 P.2d 407

Culver v. Priddy, Okla. Sup. Ct. No. 121,458 (Nov. 13, 2023, application to assume original jurisdiction denied, All Justices Concur).

Att'y Grievance Comm'n v. Frost, 85 A.3d at 276-77 (citing, In re Dixon, 994 N.E.2d 1129, 1136 (Ind.2013) ("First, the limits on professional speech by attorneys are not coextensive with the limits of the First Amendment.... Second, attorneys are expected to exercise reasonable objectivity in their statements about judicial officers."); U.S. Dist. Ct. v. Sandlin, 12 F.3d 861, 866 (9th Cir.1993) ("[O]nce a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct."); Disciplinary Counsel v. Gardner, 99 Ohio St.3d 416, 793 N.E.2d 425, 429 (2003) ("The First Amendment does not shield an attorney from discipline for falsely suggesting 'unseemly complicity' by the judiciary in unlawful or unethical practices. Such false statements, whether by attorneys or others, enjoy no constitutional protection when they are made with knowledge of their falsity or reckless disregard for their truth."); Matter of Westfall, 808 S.W.2d 829, 836 (Mo.1991) ("As officers of the court, lawyers do not stand in the shoes of ordinary citizens. Lawyers must execute their professional responsibilities ethically and pursuant to rules, carefully considered, in order to ensure the confidence of both litigants and the public.")).

See, e.g.,Gentile v. State Bar of Nevada, 501 U.S. 1030, 1043, 1059-60 (1991) ("A defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried.") (Appendix A, Press Conference Remarks by Counsel, and asserting facts to show an improper prosecution).

State ex rel.OBA v. Bailey, 2023 OK 34

Id.

State ex rel. OBA v. Pistotnik, 2020 OK 93477 P.3d 376State ex rel. OBA v. Gassaway, 2008 OK 60196 P.3d 495cf. State ex rel. OBA v. Layton, 2014 OK 21324 P.3d 1244

State ex rel. OBA v. Grayson, 2021 OK 58499 P.3d 751

State ex rel OBA v. Boyd, 2025 OK 30571 P.3d 105State ex rel. OBA v. Tweedy, 2000 OK 3752 P.3d 1003

State ex rel OBA v. Nichols, 2021 OK 28488 P.3d 734

State x rel. OBA v. Dyer, 2024 OK 72558 P.3d 22State ex rel. OBA v, Leonard, 2016 OK 11367 P.3d 498

State ex rel OBA v. Dyer, 2024 OK 72558 P.3d 22

Mothershed, at note 19 supra, 2011 OK 84State ex rel. OBA v. Giger, 2003 OK 6172 P.3d 27

Mothershed, and Giger, supra, at note 129. See 12 O.S.2021, Ch. 15, App.1, Okla. Sup. Ct. R. 1.16, stating in part: "The mandate may be issued...after the filing of an order denying...rehearing in the Supreme Court, or immediately upon expiration of time to file a...petition for rehearing...No mandate is issued upon conclusion of...bar disciplinary matters...." (material omitted).

See, e.g., State ex rel. OBA v. Hunt, 2017 OK 28394 P.3d 216State ex rel. OBA v. Malloy, 2006 OK 38142 P.3d 383

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105